14 A.3d 267 (2010)
2010 VT 95
In re R.H.
No. 09-330.
Supreme Court of Vermont.
October 29, 2010.
*269 Kurt M. Hughes of Murdoch Hughes & Twarog, P.C., Burlington, for Petitioner-Appellee.
William H. Sorrell, Attorney General, Montpelier, and Jody A. Racht, Assistant Attorney General, Waterbury, for Respondent-Appellant.
Present: REIBER, C.J., DOOLEY, JOHNSON, SKOGLUND and BURGESS, JJ.
DOOLEY, J.
¶ 1. This is one in a series of cases involving the child protection registry maintained by the Department for Children and Families (DCF). DCF included petitioner R.H. in the registry after concluding that she placed her then three-year-old daughter J.H. at substantial risk of harm by leaving her alone in an unlocked and unheated vehicle in the early morning hours of March 8, 2008. The Human Services Board reversed DCF's decision, acknowledging the risk of harm but concluding that no purpose would be served by placing petitioner's name in the registry. DCF appeals from this decision. We reverse and remand.
¶ 2. We begin with an overview of the registry process.[1] By statute, DCF must investigate reports of child abuse and neglect and maintain a record of all investigations that have resulted in a "substantiated report." 33 V.S.A. § 4916(a)(1). The information contained in the registry is confidential, and may be disclosed only to individuals and entities specified by statute. Id. §§ 4916(c), 4919. This includes employers who provide care or transportation services to children or vulnerable adults "if such information is used to determine whether to hire or retain a specific individual providing care, custody, treatment, transportation, or supervision of children or vulnerable adults." Id. § 4919(a)(3), (e).
¶ 3. A substantiated report is one that DCF determines, after investigation, is "based upon accurate and reliable information that would lead a reasonable person to believe that the child has been abused or neglected." Id. § 4912(10). An "abused or neglected child" includes a child "whose physical health, psychological growth and development or welfare is harmed or is at substantial risk of harm by the acts or omissions of his or her parent." Id. § 4912(2). "Risk of harm" means a "significant danger that a child will suffer serious harm other than by accidental means, which harm would be likely to cause physical *270 injury, neglect, emotional maltreatment or sexual abuse." Id. § 4912(4).
¶ 4. If DCF determines that a report should be substantiated, the party is notified and given the opportunity to seek an administrative review of DCF's intention to place the substantiated record into the registry. Id. § 4916a(a)-(c). At the administrative review conference, the petitioner has the opportunity to present documentary evidence and other information, and DCF bears the burden of proving that it has accurately and reliably concluded that the report was substantiated. Id. § 4916a(e). The administrative reviewer is a "neutral and independent arbiter," with "no prior involvement in the original investigation of the allegation." Id. § 4916a(f). If the administrative reviewer accepts DCF's substantiation determination, a registry record is made immediately. Id. § 4916a(h). Individuals have the right to appeal such decisions to the Human Services Board in accordance with 33 V.S.A. § 4916b, and the Board must hold a fair hearing pursuant to 3 V.S.A. § 3091. 33 V.S.A. § 4916b(a).
¶ 5. The law also provides a process by which parties can petition to have their names expunged from the registry. In such proceedings, the person seeking expungement must prove that a reasonable person would believe that he or she no longer presents a risk to the safety or well-being of children. Id. § 4916c. The statute identifies numerous factors relevant to such a determination, including: the nature of the underlying incident that resulted in substantiation; whether a similar incident is likely to occur; activities (such as therapy, employment or education) that reflect upon the person's changed behavior or circumstances; and references that attest to the person's good moral character. See id. § 4916c(b). The expungement decision may be appealed to the Board, and the "sole issue" for review in such cases is whether the commissioner abused his or her discretion in denying the request for expungement. Id. § 4916c(e).
¶ 6. As noted above, DCF determined in this case that on March 8, 2008, petitioner put J.H. at substantial risk of harm. Petitioner requested an administrative review of this decision, and following a review meeting with petitioner and petitioner's attorney, the independent reviewer accepted DCF's substantiation. See id. § 4916a(g) (administrative reviewer authorized to accept, reject, or place substantiation determination on hold pending further investigation). In a letter to petitioner, the reviewer recounted the underlying facts and cited the relevant statutory provisions defining "substantiated report" and "risk of harm." The reviewer also relied on a DCF policy, then in effect, for cases involving a "single egregious act." In such cases, the reviewer explained, a report should be substantiated "if a reasonable person would believe that all four of the following criteria are met: the parent or caretaker did the act alleged; the act was egregious; there was a significant risk that the child could have been physically injured as a result; and, the physical injury would be serious." See Vermont Dep't for Children & Families, Family Services Div., Family Services Policy Manual, Policy No. 55, at 3 (effective Jan. 1, 2007) [hereinafter DCF Policy No. 55], available at http://dcf.vermont.gov/sites/dcf/files/pdf/fsd/policies/55__Risk_of__ Harm__Final__1-07.pdf. The term "egregious" is defined as "conspicuously and outrageously bad or reprehensible." Id. The reviewer determined that the legal and policy standards were satisfied and that petitioner's name should therefore be placed in the registry.
¶ 7. Petitioner then requested a fair hearing before the Human Services Board. *271 Following a hearing, the Board reversed the substantiation. It found the following facts. The incident that gave rise to the registry action occurred while petitioner was going through a divorce from her husband. She and J.H. were returning from an out-of-state trip on a flight into Boston. The flight was delayed, and as a result, she did not begin driving to Vermont until almost midnight. She was scheduled to work the following day beginning at 8 a.m.
¶ 8. On the way home, at approximately 3:00 a.m., petitioner stopped at a friend's condominium to return a GPS system and to ask her friend to remove from her computer spyware that her husband had installed. J.H. was asleep, and petitioner decided to leave her inside the van. Petitioner intended to visit her friend for only a short time, and she believed that J.H. would be fine for that period. She turned off the car, left the radio and parking lights on, and left the car unlocked with the keys in it. J.H. had on a light winter coat and boots, but no gloves or hat. The outdoor temperature was about thirty-two degrees.
¶ 9. As it turned out petitioner was gone for approximately an hour. The police arrived around 4:00 a.m. in response to a call about a suspicious vehicle. They found J.H. in the front seat of petitioner's van. She was frightened, shivering, and asking for her mother. Her hands were cold. Shortly thereafter, petitioner returned to the vehicle.
¶ 10. Relying on testimony that post-dated this incident, the Board found that petitioner's husband had filed a relief-from-abuse action based on petitioner's actions. At the final relief-from-abuse hearing, petitioner testified that she had made a terrible mistake, she was sorry, and that it would not happen again. Petitioner stated that she had been scared and exhausted when she stopped at her friend's house; she had been getting moral support and lost track of time. She noted that she was in counseling due to the stress from her marital relationship. The family court found that petitioner had engaged in an act of "severe neglect," and granted the relief-from-abuse order for a three-month period. The relief-from-abuse order was vacated in the fall of 2008 in connection with the parties' divorce proceedings.
¶ 11. Based on these and other findings, the Board reversed DCF's substantiation decision. As an initial matter, the Board rejected DCF's assertion that the family court's finding in the relief-from-abuse action of "severe neglect," referenced above, conclusively established that petitioner placed J.H. at risk of harm on March 8, 2008. After evaluating the elements of collateral estoppel, the Board determined that applying the doctrine here would be unfair.
¶ 12. Turning to the merits, the Board applied a "gross negligence" or "reckless behavior" standard to determine if petitioner's actions rose to the level of "risk of harm." Citing Rivard v. Roy, 124 Vt. 32, 196 A.2d 497 (1963), the Board defined such terms as whether "the act (a) demonstrated a failure to exercise a minimal degree of care or showed an indifference to a duty owed to another and (b) was not merely an error of judgment, momentary inattention or loss of presence of mind." See id. at 35, 196 A.2d at 500 ("gross negligence" in motor vehicle case "amounts to a failure to exercise even a slight degree of care, and to indifference to the duty owed a guest passenger and utter forgetfulness of his safety; but there must be something more than an error of judgment, momentary inattention, or loss of presence of mind" (quotation omitted)). The Board concluded that petitioner's actions satisfied that standard here. It reiterated the essential facts, and found that *272 leaving a child alone in a vehicle whether for a minute or for a longer period was negligent and fraught with risk.
¶ 13. Nonetheless, the Board concluded that even if gross negligence was found, the issue remained whether placement in the registry was appropriate given this one incident. Looking at the situation as a whole, the Board concluded that placing petitioner in the registry would not serve any purpose. It found that the registry gave employers and organizations working with children notice that a particular person was a risk to children and that such person would be prevented from interacting with children through either paid employment or volunteer activities. In this case, the evidence showed that petitioner had resumed her custodial role with her children, and there was no evidence that she was a threat to her own children or to other children. The Board found the incident here was unique and out of character for petitioner, and noted that petitioner had taken responsibility for her actions. The Board also observed that the incident occurred at a stressful time coinciding with marital problems, and that petitioner had received counseling to deal with her marital issues. The Board considered petitioner's history as well, noting her volunteer work at the child's school and her participation in their extracurricular activities. Based on its analysis, the Board reversed DCF's decision to substantiate the risk of harm. This appeal followed.
¶ 14. DCF argues that the Board exceeded its authority by evaluating whether petitioner posed a future risk of harm to children. It maintains that when the Board found that petitioner placed J.H. at risk of harm on March 8, it was obligated to uphold DCF's substantiation decision. DCF also reiterates its argument that petitioner is barred by collateral estoppel from challenging whether her act was one of "severe neglect" given the family court's finding to this effect in the relief-from-abuse case. Because of our conclusion on the standard that must be met to place a person in the registry for a single act, we begin with whether the Board exceeded its authority and then consider the collateral estoppel issue.
¶ 15. To address DCF's arguments on the merits of the Board decision, we must first address the scope of the Board's review of DCF's decision to substantiate a report of abuse or neglect. We considered a similar issue in In re Bushey-Combs, 160 Vt. 326, 628 A.2d 541 (1993), albeit under a different statutory scheme. At the time Bushey-Combs was decided, the registry law allowed a petitioner to seek expungement from the registry at any time on the grounds that the report of abuse or neglect was unsubstantiated. See 33 V.S.A. § 4916(h) (1993). The Board was directed by statute to hold a fair hearing on such requests and DCF (then called the Department of Social and Rehabilitative Services) bore the burden of showing why the record should not be expunged. Id. We concluded in Bushey-Combs that the Legislature intended the Board to engage in de novo review of DCF's decision, rather than merely acting as an appellate tribunal. "By requiring [DCF] to come forward with evidence to meet its burden," we explained, "the legislature intended to allow the Board to make determinations beyond those allowed by review of [DCF's] record." Bushey-Combs, 160 Vt. at 329, 628 A.2d at 542-43.
¶ 16. We reach a similar conclusion here. Although the statutory scheme has changed since 1993, the burden remains with DCF to justify its substantiation decision in the fair hearing before the Board. While there is now an internal administrative review process in place, we are not persuaded that this procedure changes the *273 nature of the Board's review. The administrative reviewer operates under the auspices of DCF. See 33 V.S.A. § 4916a(f). The reviewer does not conduct an adjudicative hearing nor does he or she specifically find facts. The reviewer is not statutorily authorized to compel evidence by subpoena, examine witnesses and issue written findings, as is the Board. See 3 V.S.A. § 3091(b)-(c). Instead, the reviewer holds a conference at which the grievant is provided the opportunity to provide information. 33 V.S.A. § 4916a(e). It remains true, therefore, that as in Bushey-Combs, DCF's substantiation determinations are "significantly different in nature from those of an adjudicative body." 160 Vt. at 329, 628 A.2d at 543.
¶ 17. The Board's statutory authority to hold a fair hearing similarly has not changed, 33 V.S.A. § 4916b(a), and the Board remains empowered to engage in de novo review. These powers "would be meaningless," as we found in Bushey-Combs, "if the Board were limited to determining only whether [DCF] had sufficient evidence to support its conclusions." 160 Vt. at 328, 628 A.2d at 542. Where the Legislature intended that the Board's review of DCF's decisions be limited, moreover, it has stated so explicitly. See 33 V.S.A. § 4916c(e) (directing Board to conduct "on the record" review of DCF's expungement decision, limiting Board's review to question of whether DCF abused its discretion, and stating that Board must defer to commissioner's determination of the credibility of witnesses). Bushey-Combs was clearly the governing precedent for Board hearings at the time that the current statutory scheme was adopted. If Bushey-Combs were not to apply to child protection registry appeals, we can expect the Legislature to have specified a different review procedure.
¶ 18. We reject the suggestion that 3 V.S.A. § 3091(d) somehow limits the Board's authority to reach its own conclusion as to whether a report of abuse is substantiated. Section 3091(d) provides in relevant part that "[a]fter the fair hearing the board may affirm, modify or reverse decisions of the agency." It also states that "[t]he board shall not reverse or modify agency decisions which are determined to be in compliance with applicable law, even though the board may disagree with the results effected by those decisions." Id. These provisions were included as part of the original legislation creating the Human Services Board and delineating the Board's authority in conducting fair hearings. See 1973, No. 101, § 5. With a minor exception, § 3091(d) has not changed since that date. While we did not explicitly discuss § 3091(d) in Bushey-Combs, we rejected the notion that the Board must defer to DCF's conclusions regarding substantiation. 160 Vt. at 329, 628 A.2d at 543. We find no reason to hold otherwise here given the statutory scheme in place at the time of the fair hearing.
¶ 19. In any event, the language in 3 V.S.A. § 3091(d) is not determinative of a case like this one. DCF argues that the statute means that the Board cannot overturn DCF's factual findings and conclusions on mixed questions of fact and law, unless DCF's decision is not in "compliance with applicable law." 3 V.S.A. § 3091(d). In context, we believe that the statute has a narrower meaning. The sentence before the one on which DCF relies states: "The board shall consider, and shall have the authority to reverse or modify, decisions of the agency based on rules which the board determines to be in conflict with state or federal law." Id. The sentence on which DCF relies simply states the obverse of the prior statement, making clear that the Board does not have the power stated in the prior sentence if *274 the DCF decision is in compliance with applicable law. It does not provide that the Board's review occurs on the record or the Board must give deference to DCF's finding.
¶ 20. In registry cases, moreover, the Board reaches a legal conclusion whether the facts it has found support a reasonable belief that the statutory standard is satisfied. If the Board disagrees with DCF's substantiation decision, it has concluded that DCF's decision did not comply with the applicable law. See id. (Board must not reverse or modify agency decisions determined to be in compliance with applicable law). There would be no legal basis for including a person in the registry if the person has not placed his or her child at substantial risk of harm.
¶ 21. As before, then, we defer to the Board's decision regarding substantiation on appeal. See K.G. v. Dep't of Soc. & Rehab. Servs., 171 Vt. 529, 530, 758 A.2d 323, 325 (2000) (mem.) (stating that Court reviews Human Service Board's conclusion regarding substantiation for abuse of discretion); see also In re E.C., 2010 VT 50, ¶ 6, ___ Vt. ___, 1 A.3d 1007 (mem.) (noting that Court generally defers to Board's decisions) (citing cases). It is elemental, of course, that the Board must follow the law in deciding whether a report is substantiated. See In re E.C., 2010 VT 50, ¶ 6, ___ Vt. ___, 1 A.3d 1007 (explaining that Court reviews Board's decision to ensure that it applied the appropriate legal standard). As discussed below, the Board failed to do so here, and we therefore reverse its decision. See, e.g., Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) (observing that it is necessarily an abuse of discretion where a ruling is based "on an erroneous view of the law or on a clearly erroneous assessment of the evidence").
¶ 22. Under the statutory scheme in effect at the time this case was heard, the only question before DCF, and consequently before the Board, was whether a reasonable person would believe that J.H. was placed at a "substantial risk of harm" due to petitioner's actions on March 8, 2008. The definition of "substantiated report," by its plain terms, focuses on the alleged act of abuse or neglect at issue. As stated above, a "substantiated report" is one "that would lead a reasonable person to believe that the child has been abused or neglected." 33 V.S.A. § 4912(10) (emphasis added); Chayer v. Ethan Allen, Inc., 2008 VT 45, ¶ 10, 183 Vt. 439, 954 A.2d 783 (reiterating that when interpreting a statute, Supreme Court applies plain language of enactment unless language is ambiguous). DCF must investigate reports of abuse and neglect within seventy-two hours, 33 V.S.A. § 4915(a), and the analysis is not forward-looking. Once a report is substantiated, it must be included in the registrythere is no room for the exercise of discretion. See id. § 4916(a)(1) (requiring that DCF commissioner maintain child protection registry "which shall contain a record of all investigations that have resulted in a substantiated report on or after January 1, 1992").
¶ 23. In contrast, the expungement process specifically allows for an evaluation of a parent's post-incident conduct. Id. § 4916c(b)(1)-(5). Thus, DCF must consider, among other factors, whether "a similar incident would be likely to occur" and whether a petitioner's behavior has changed since the date of the incident. Id. § 4916c(b)(4), (5). Indeed, in deciding if expungement is appropriate, the very question before DCF is whether the petitioner "no longer presents a risk to the safety or well-being of children." Id. § 4916c(b). However, expungement may *275 be sought by a person whose name has been placed on the registry only if the person has been listed on the registry for a certain period of time. Id. § 4916c(a).[2]
¶ 24. This approach served a practical purpose. Were it otherwise, DCF's decision to substantiate a report would remain continually subject to revision based on the petitioner's future conduct. By the time a fair hearing was heldin this case, one year after the incidentthe petitioner could point to his or her improved circumstances to show that DCF erred in substantiating the report, despite the fact that DCF did not have such information at the time its decision was made and regardless of the fact that a child had in fact been abused or neglected. While we recognize that the Board engages in de novo review of DCF's decision, such an approach would render the DCF investigation and substantiation process a nullity. The Legislature reasonably sought to avoid this result. The Board failed to follow the plain language of the statute. It had no discretion to conflate these two distinct statutory procedures, and it erred in considering whether petitioner was likely to commit similar acts of negligence in the future.[3]
¶ 25. Our conclusion on the proper construction of the registry statutes does not, however, entirely determine this appeal. We must reverse and remand this case to the Board for consideration under the applicable law.
¶ 26. We are confronted by a situation where we have two different versions of the standard for registry substantiation. The Board ruled that in "risk of harm" cases the Board uses a "gross negligence or reckless behavior standard to determine if a person's actions rise to the level of risk of harm." Apparently based on former decisions, the Board has adopted the gross negligence standard from Rivard, 124 Vt. at 35, 196 A.2d at 500, to determine if a child's physical health was "at substantial risk of harm by the acts or omissions of his or her parent or other person responsible for the child's welfare." 33 V.S.A. § 4912(2); see In re LaTour, No. 2008-242, 2009 WL 427898, at *2 (Vt. Feb. 4, 2009) (unreported mem.) (discussing definition of "gross negligence"), available at http://www.vermontjudiciary.org.
¶ 27. DCF, on the other hand, by policy directives to staff adopted a number of standards for determining whether a child was abused or neglected depending upon the circumstances of the case. At the time of the incident, the standards were contained in DCF's Family Services Policy Manual, Policy No. 55. Although the content of the policy was not a rule at the time, it was the policy that the administrative reviewer applied in reaching her decision pursuant to 33 V.S.A. § 4916a(g).[4] *276 Petitioner argued to the Board that it should reverse under the Policy No. 55 standard, and she has argued similarly to this Court.
¶ 28. The policy contains a provision on substantiation of abuse or neglect based on a single act, a "single egregious act." DCF Policy No. 55, at 3. Under the policy, "[a] report will be accepted that alleges that the parent ... has committed a single, egregious act that has caused the child to be at significant risk of serious physical injury." Id. (footnote omitted). The policy identifies specific criteria necessary to support substantiation for a single egregious act: a parent committed the alleged act; the act was egregious; there was a significant risk that child could have been physically injured as a result; and the physical injury would be serious. Id. For purposes of this policy, "[e]gregious means conspicuously and outrageously bad or reprehensible." Id. at 3 n. 1. The Board did not use this standard. Nevertheless, petitioner argues that her conduct should be judged under this standard, and, if so judged, that there were no grounds for substantiation because her act was not egregious.
¶ 29. Although we give deference to the decisions of the Human Services Board, see Bushey-Combs, 160 Vt. at 329, 628 A.2d at 543, we sustain the interpretation of a statute by an agency responsible for its execution "absent compelling indications of error," In re Rusty Nail Acquisition, Inc., 2009 VT 68, ¶ 25, 186 Vt. 195, 980 A.2d 758 (quotation omitted). In this case, DCF is the agency responsible for the administration of the registry statutes, and its interpretation must be followed absent compelling indications of error.
¶ 30. In many respects, the Board and DCF have addressed the same concern about the administration of the statute in different ways. The concern of both is that an isolated single incident of conduct that causes a risk of harm to the child should not cause a person to be included in the registry absent relatively extreme circumstances. The Board addressed this concern by looking at the conduct and circumstances of the parent or caretaker after the incident to determine whether there was a risk of reoccurrence. As we held above, this approach is not consistent with the language of the statute, and we cannot affirm it. DCF, on the other hand, looks to the degree of misconduct involved in the action of the parent or caretaker and reserves registry inclusion in single incident cases for misconduct that is egregiousthat is, outrageously bad or reprehensible. We believe that DCF's approach is consistent with the statute which requires that the risk of harm to the child be "substantial," 33 V.S.A. § 4912(2), and create "significant" danger, id. § 4912(4). Both of the quoted words in the statute involve matters of degree for which it is relevant whether the parent or caretaker engaged in a pattern of inappropriate behavior or only a single incident of misbehavior. We adopt DCF's interpretation of the statute, finding no compelling indication of error in it.
¶ 31. As with this Court, the Board must give deference to DCF's interpretation of the statutory scheme that it administers. It is not consistent with fair administration of justice for DCF, and its administrative reviewers, to use one standard of abuse or neglect for registry inclusion and have the Board employ an entirely different standard on appeal. At a minimum, this system leads to inconsistent decisions determining when substantiation has occurred. Thus, we hold that *277 the Board should have used the standard embodied in Policy No. 55 and must do so on remand.
¶ 32. Finally, we address DCF's argument that petitioner is collaterally estopped from challenging her inclusion in the registry by the decision of the family court granting an abuse prevention order because of petitioner's abuse of J.H. Because, as we hold, resolution of this argument depends upon the legal standard used by the family court and the Board, we decide this issue last.
¶ 33. The leading case setting out the criteria for determining whether issue preclusion or collateral estoppel applies is Trepanier v. Getting Organized, Inc., 155 Vt. 259, 583 A.2d 583 (1990). In that case, we identified five criteria that must be found to apply issue preclusion:
[P]reclusion should be found only when the following criteria are met: (1) preclusion is asserted against one who was a party or in privity with a party in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the issue is the same as the one raised in the later action; (4) there was a full and fair opportunity to litigate the issue in the earlier action; and (5) applying preclusion in the later action is fair.
Id. at 265, 583 A.2d at 587. We recognized that the use of "offensive collateral estoppel," such as that involved here, "where a new plaintiff seeks to estop a defendant from relitigating an identical issue that the defendant previously litigated and lost against another plaintiff," "is more controversial than the use of defensive collateral estoppel, and generally requires additional considerations." Id. at 265 n. 2, 583 A.2d at 587 n. 2.
¶ 34. The earlier action here arose when petitioner's husband filed a relief from abuse petition against petitioner, alleging that petitioner abused J.H. in the incident of March 8, 2008. In that action, the family court found that petitioner's act constituted "severe neglect ... and it supports a finding of abuse under Title 15, Section 1101 under Chapter 49 of Title 33." The later action is this appeal to the Human Service Board. DCF argues that all five criteria are satisfied and that petitioner is precluded from arguing there is no substantiated abuse in this appeal because of the family court's determination. It argues that the issue is governed by In re P.J., 2009 VT 5, ¶ 9, 185 Vt. 606, 969 A.2d 133 (mem.), in which we held that a determination that a parent had neglected the nutritional needs of a child in a child-in-need-of-care-or-supervision (CHINS) proceeding precluded relitigation of the same issue in a proceeding seeking to expunge the parent's name from the child abuse registry.
¶ 35. The Board rejected DCF's argument, ruling that applying issue preclusion in this case is not fair because of the different purposes of the abuse prevention act and the registry statutes. We agree but for a different reason. We note that our standard of review is de novo. See id. ¶ 7.
¶ 36. In this case, we focus particularly on whether the issue in the earlier action is necessarily the same as in the later action. Preclusion is possible only if the issue was "necessarily and essentially determined in a prior action." State v. Pollander, 167 Vt. 301, 305, 706 A.2d 1359, 1361 (1997) (quotation omitted). DCF argues that the issue is the same because the definition of abuse in the Abuse Prevention Act includes "[a]buse to children as defined in subchapter 2 of chapter 49 of Title 33." 15 V.S.A. § 1101(1)(C); Wood v. Eddy, 2003 VT 67, ¶ 10, 175 Vt. 608, 833 A.2d 1243 (mem.) (concluding that 15 V.S.A. § 1101(1)(C) "alone provides the *278 definition of abuse relevant to relief from abuse hearings involving children"). As a result, 15 V.S.A. § 1101(1)(C) adopts by reference the definition of an "abused or neglected child" in 33 V.S.A. § 4912(2), the standard used to determine inclusion in the registry. Thus, DCF argues that the family court judge determined that the grounds exist for placing petitioner in the registry when the judge ruled that petitioner had abused J.H.
¶ 37. It is clear, however, that the family court judge did not make the abuse ruling under the single-egregious-act standard we have ruled is applicable for inclusion of a parent or caretaker in the registry. Indeed, based on its ruling, it appears that the family court applied a standard similar to the gross negligence standard used by the Board. Apparently, neither the parties nor the judge was aware of the single-egregious-act standard or its use by DCF to determine registry inclusion. Nor do we rule that the standard applied by DCF in administering the registry law is applicable to a family court proceeding under a law, 15 V.S.A. § 1103, that DCF does not administer. Because the family court applied a different standard to determine that petitioner abused J.H., petitioner is not precluded from challenging DCF's decision to substantiate her for placing J.H. at risk of harm. See, e.g., Peterson v. Clark Leasing Corp., 451 F.2d 1291, 1292 (9th Cir. 1971) (per curiam) (stating that doctrine of collateral estoppel "applies only to issues that are identical in both actions," and "[i]ssues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits be the same.").
Reversed and remanded.
NOTES
[1] The statutes governing the registry process have changed since the date of this incident. See 2007, No. 168 (Adj.Sess.). We apply the law in effect as of March 2008, and all statutory references are to such laws, unless otherwise noted. See generally 2007, No. 77 (essentially setting forth law in effect at time petitioner here was substantiated).
[2] Current law allows an individual whose name is entered on the registry before July 1, 2009, to seek expungement after three years. 33 V.S.A. § 4916c(a).
[3] Petitioner argues that DCF Policy No. 55, discussed in detail below, shows DCF's position to consider later events in appropriate circumstances. We do not read the policy as taking this position. Petitioner relies upon language in the section on age-appropriate supervision that she argues involves consideration of events after the incident for which abuse is substantiated has occurred. The language requires DCF staff to consider, among other factors, whether "[t]he caretaker has not taken effective steps to reduce or eliminate [the] .. . risk [of serious physical injury]." DCF Policy No. 55, at 3-4. We do not agree that this language requires assessment of post-incident facts.
[4] Much of the content of this policy and others have been adopted as rules. See generally Response to Child Abuse and Neglect, chapter 200, §§ 2000-2013, 5 Code of Vermont Rules 13 172 200-1 to -7 (effective July 1, 2009), available at http://dcf.vermont.gov/fsd/rules. Apparently, the rule has replaced the policy so that the policy is no longer in effect.