*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2011-147

NOVEMBER TERM, 2011

| | | |
|---|---|---|
| In re A.P. | } | APPEALED FROM: |
| | } | |
| | } | Human Services Board |
| | } | |
| | } | |
| | } | DOCKET NO. S-07/08-308 |

In the above-entitled cause, the Clerk will enter:

Petitioner appeals from a decision by the Human Services Board, which found that he placed his daughter at risk of harm of serious physical injury. He argues that the Board misapprehended the record, and that it erred in finding his conduct egregious. We affirm.

The Board found as follows. In December 2005, petitioner's daughter H., who had just turned seven, disclosed to school officials that petitioner had placed his hand on her throat and lifted her off the ground. The school reported the incident to the Department for Children and Families (DCF), but the report was not substantiated at that time, apparently due to a lack of physical injury or any corroborating witnesses. DCF reopened its investigation of the incident in early 2008 in connection with family court proceedings, which are discussed in more detail below. In February 2008, DCF substantiated the choking incident as one of child abuse. Following a review, DCF affirmed this decision in a June 2008 letter to petitioner. Petitioner appealed this decision to the Board. Several status conferences occurred prior to the final hearing in this matter. The matter was continued given that there was a child-in-need-of-care-or-supervision (CHINS) proceeding in progress, and that the alleged abuse of H. by petitioner was likely to be an issue in those proceedings. The CHINS proceeding became protracted, lasting nearly a year. In February 2010, the family court issued a lengthy decision regarding the "permanency plans" of petitioner's children, including H.

Following the family court's decision, DCF sought to admit hearsay evidence in the Board proceedings regarding the abuse, or to provide accommodation to H. in testifying before the Board, or both. The hearing officer denied the motion, and the matter was set for a final hearing. Prior to the hearing, the hearing officer made several rulings regarding the admissibility and scope of certain testimony with respect to the family court's findings in the CHINS proceeding. The hearing officer included in his decision the history of the family, as recounted by the family court, which he found to be undisputed by the parties. This included the following information. Petitioner and H's mother began divorce proceedings in February 2006. Petitioner moved to New Hampshire. The divorce was bitterly contested and traumatic for the parties' four children. The divorce became final in April 2007. Mother was awarded custody of the children

with liberal visitation by father. There was no allegation or indication in the record that the family court at that time considered the specific allegation of abuse by petitioner against H.

In July 2007, H.'s brother committed suicide. In September 2007, DCF initiated CHINS proceedings, alleging that mother was unable to care for the children due to her mental health and that petitioner had choked H. several years earlier. Mother did not contest the allegations against her. Petitioner did contest the allegation of abuse, but those allegations were "dropped" as a specific basis for the petition as the CHINS process went forward. As previously noted, however, in February 2008, DCF substantiated petitioner for having choked H. in December 2005. An extensive forensic psychological evaluation of the family was submitted to the family court, and this report noted that H. had recounted the choking incident to her therapists. The family court also noted in its decision petitioner's unwillingness to acknowledge any problems in his treatment of the children or any instances of domestic violence. The decision also reflected the reports and testimony of several other treatment professionals regarding H.'s reports of the choking incident. The family court did not make any findings on this issue, but the hearing officer found that the court's order made clear that it was satisfied that "the evidence regarding H.'s reports and memories of the incident was consistent and credible."

Given the family court's decision, the hearing officer sustained petitioner's objection that any testimony and evidence that DCF was prepared to submit regarding H.'s hearsay statements to others prior to the date of the family court's order would be unnecessarily cumulative as to the issue of H.'s ultimate credibility. In the end, H. did testify at the September 2010 hearing before the hearing officer. Thus, the hearing officer found that most, if not all, of the issues raised by both parties as to the pertinence of and reliance upon the family court's findings had essentially been rendered moot. The hearing officer specified that, except for the uncontested and previously resolved background information provided above, the hearing officer based his findings of fact solely on the testimony and comparative credibility of the witnesses at the hearings in the Board matter, held in September and October 2010.

The hearing officer found that H., who turned twelve shortly after the hearing, appeared highly intelligent and competent. She was responsible and forthright in her testimony despite the stress of testifying. H. stated that she loved both parents. She testified that she was "not sure" if the choking incident actually happened but that she had a "vivid memory" that when she was six years old, petitioner became angry after the dog made a mess, that he lost control and strangled her by putting his hand on her throat, against the wall, and lifting her three feet in the air. H. admitted that while she had been staying with petitioner during the summer before the hearing, she had told several extended family members that she had "lied" to her therapists about the incident. H. testified at the hearing, however, that she felt that petitioner's family had pushed her so much that she had had "lied" to them to make petitioner happy. H. testified that she "want[ed] [the incident] to be a dream," but that her memory of the incident was largely consistent with what she had told other people.

The hearing officer was not persuaded by the testimony of petitioner's witnesses that H. had spontaneously told them that she had "lied" about the abuse and that they did nothing to pressure H. into making such statements. The hearing officer found their testimony directly contrary to H.'s credible testimony and highly suspect. The hearing officer was similarly not persuaded by petitioner's assertion that H.'s mother had implanted the notion of the abuse in H.'s

2

mind. Based on H.'s testimony and demeanor, the hearing officer found that the incident as she described it did occur, however brief and isolated it may have been. The hearing officer noted that while petitioner denied committing the act, he had not disputed that picking up a young child by the neck, in anger or otherwise, was an egregious act of physical endangerment. Given H.'s consistency over time, and the candor and nuances of her testimony at the hearing, the hearing officer found it highly unlikely that she either imagined the event or that she had it implanted in her mind by someone else. The hearing officer concluded that H. had been abused within the meaning of the relevant statute, and he upheld DCF's decision to substantiate the report that petitioner placed H. at risk of harm of serious physical injury. The Board adopted the hearing officer's decision, and this appeal followed.

Petitioner argues that the Board misapprehended the record in reaching its decision. He points to evidence that he feels should have led the Board to discredit H.'s testimony. He also states that the Board misunderstood the family court's decision and mistakenly relied upon it in reaching its decision. Finally, he asserts that the Board's conclusion that the incident was egregious improperly shifted the burden of proof to him and that this conclusion was unsupported by the evidence.

We begin with a brief overview of the registry process. By law, DCF must maintain a confidential registry that contains a record of all investigations that result in a substantiation. 33 V.S.A. § 4916. A "substantiated report" is one that is "based upon accurate and reliable information that would lead a reasonable person to believe that the child has been abused or neglected." Id. § 4912(10). An "abused or neglected child" is one "whose physical health, psychological growth and development or welfare is harmed or is at substantial risk of harm by the acts or omissions of his or her parent." Id. § 4912(2). "Risk of harm" is defined as a "significant danger that a child will suffer serious harm other than by accidental means, which harm would be likely to cause physical injury, neglect, emotional maltreatment or sexual abuse." Id. § 4912(4). Pursuant to DCF policy, "[a] report will be accepted that alleges that the parent . . . has committed a single, egregious act that has caused the child to be at significant risk of serious physical injury." See In re R.H., 2010 VT 95, ¶ 28 (quoting and discussing DCF policy on investigation of alleged abuse or neglect).

The Board did not err in finding that these standards were satisfied here. See id., ¶ 21 (explaining that Court defers to Board's substantiation decision and reviews decision for abuse of discretion). As to petitioner's first argument, it is elemental that it is for the factfinder, not this Court, to weigh the evidence and assess the credibility of witnesses. See In re E.C., 2010 VT 50, ¶ 6, 188 Vt. 546. The Board found H. credible, and it acted well within its discretion in doing so. The Board did not adopt any of the family court's findings regarding abuse, as petitioner suggests, nor did it rely on the doctrine of issue preclusion. To the contrary, the Board made clear that, except for the uncontested and previously resolved background information, its findings of fact were based solely on the testimony and comparative credibility of the witnesses who testified at the hearing before the Board. This is in stark contrast to the "misapprehension" of the record requiring reversal in In re D.B., 2003 VT 81, ¶ 6, 175 Vt. 618, where the purported findings were "wholly unsupported" by the record, relied upon by petitioner. There is ample support for the Board's finding, moreover, that H. provided consistent reports and had a consistent memory of being choked by petitioner.

3

Finally, the Board did not shift the burden of proof to petitioner in finding his conduct egregious. It certainly did not conclude that the incident was egregious simply because petitioner failed to contest that fact below. It merely observed that this was not an argument that petitioner pursued at the hearing. In any event, putting aside the lack of preservation, it cannot reasonably be disputed that when a three-hundred pound man chokes a small child in anger and lifts her up by the throat, he has committed an egregious act. Petitioner fails to show that the Board abused its discretion in upholding DCF's substantiation decision.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Brian L. Burgess, Associate Justice