2013 VT 89

## In re Catherine Harwood

[86 A.3d 976]

No. 12-110

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed September 27, 2013

*Catherine Harwood,* Pro Se, Norwich, Appellant.

*William H. Sorrell,* Attorney General, Montpelier, and *Peter Kopsco,* Assistant Attorney General, Waterbury, for Appellee.

¶ 1. **Burgess, J.** Petitioner Catherine Harwood appeals a Human Services Board decision applying the doctrine of collateral estoppel to uphold the substantiation of her abuse of a vulnerable adult and thereby placing her name on the adult abuse registry. Petitioner argues that she should not be precluded from appealing the abuse substantiation because she was never given a full and fair opportunity to challenge the allegations. We agree, and reverse and remand.

¶ 2. The relevant facts are undisputed. Petitioner is the mother of M.T., a thirty-five-year-old woman who has significant developmental disabilities and is unable to care for herself. Specifically, M.T. suffers from severe to profound mental retardation and developmental delay, epilepsy, bilateral ankle contracture and unsteady gait, premenstrual syndrome, bilateral strabismus and astigmatism. M.T. has the cognitive abilities of a child around twenty months old. She also has a history of throwing tantrums and demonstrating self-destructive behavior, such as banging her head against the wall and biting her arm when she is agitated. Petitioner was M.T.'s sole legal guardian and the supervisor of M.T.'s care from April 2010 until the probate court terminated her guardianship in June 2011. While she was M.T.'s guardian, petitioner purchased M.T. a home across the street from her own in Norwich using a trust established with M.T.'s funds for M.T.'s benefit. Petitioner also employed two private caregivers, who cared for M.T. at night.

¶ 3. This case involves two sets of proceedings initiated by the Department of Disabilities, Aging, and Independent Living (DAIL). In May 2011, DAIL received a complaint alleging that one of M.T.'s caregivers had seen petitioner physically and verbally abuse M.T. The caregiver, who has no prior experience or special training in caring for a developmentally disabled adult, alleged that petitioner pulled M.T. by her hair, yelled at M.T., grabbed and pulled M.T. by her arm, and put her hand over M.T.'s mouth in a forceful manner.

¶ 4. DAIL investigated the complaint immediately in accordance with 33 V.S.A. § 6906. During its inquiry, DAIL's investigator interviewed several of M.T.'s care providers and family members. Based on the information gathered, DAIL filed an ex parte motion for immediate removal of petitioner as M.T.'s legal guardian and for appointment of a successor guardian on June 6, 2011. That same day, the probate court granted DAIL's motion on an emergency basis, removing petitioner as temporary guardian under 14 V.S.A. § 3077 and 14 V.S.A. § 3081. The court found that petitioner was "unable to meet the health and safety needs of [M.T.]."

¶ 5. The probate court held an evidentiary hearing on June 16, 2011 for final termination of petitioner's guardianship. During the hearing, the court heard from several witnesses, including petitioner, who participated pro se. The court removed petitioner as guardian in a written decision entered on June 22, 2011. In particular, the court found that petitioner had not established any services for M.T. and expressed concern over petitioner's "reluctan[ce] to accept assistance from others." The court concluded that the "situation could escalate" and that there was "a significant risk of serious and irreparable harm to [M.T.]" if petitioner remained M.T.'s guardian. The court also noted that it was troubled by petitioner's "very physical and harsh treatment of [M.T.] which she did not refute."

¶ 6. Petitioner filed a motion to amend the court's order on July 6, 2011, requesting the court to: (1) clarify whether her conduct meets the statutory definition of abuse in 33 V.S.A. § 6902; (2) strike the court's order requiring her to provide the court and other interested parties with a copy of the trust that she set up with M.T.'s assets; and (3) relieve her from the court's order requiring her to maintain responsibility for the payment of M.T.'s bills and home care. DAIL opposed the motion, emphasizing its need for the trust information in order to obtain necessary services for M.T. The probate court denied petitioner's motion on July 22, 2011, reasoning that there was no legal basis for petitioner's refusal to provide a copy of the trust and ordering her to provide the copy and continue to pay all of M.T.'s bills.

¶ 7. ■ Meanwhile, DAIL had finished its investigation and substantiated petitioner's abuse of M.T. in a written report submitted on June 8, 2011. Petitioner timely requested an admin-

istrative hearing to challenge the finding of abuse, and the hearing took place on July 15, 2011. On August 25, 2011, the Deputy Commissioner of DAIL notified petitioner that she was substantiating the abuse allegations and informed petitioner of her right to appeal the decision. Petitioner's name was added to the state abuse registry in accordance with 33 V.S.A. § 6911(b). See *In re Tinker*, 165 Vt. 621, 622, 686 A.2d 946, 947 (1996) (mem.) ("A substantiated report of abuse as defined by § 6902(1)(A) does not give rise to criminal penalties; rather, the person found to have committed the abuse will be included in a registry that can be accessed by employers . . . who hire individuals to care for elderly or disabled adults.").

¶ 8. Petitioner immediately appealed DAIL's abuse substantiation to the Human Services Board. In a February 3, 2012 decision, the Board held that the doctrine of collateral estoppel barred petitioner from revisiting the issue of whether she had abused M.T. under the five-part test adopted in *Trepanier v. Getting Organized, Inc.*, 155 Vt. 259, 265, 583 A.2d 583, 587 (1990). The Board reasoned that it was not unfair to deny petitioner the opportunity to litigate the abuse issue because petitioner was a party in the probate court proceedings and the probate court's findings of fact were sufficient to show that petitioner abused M.T. Petitioner appeals.

¶ 9. On appeal, petitioner argues that the Board erred in applying the doctrine of collateral estoppel in this case because she was never given a full and fair opportunity in the probate court proceeding to challenge the investigator's allegations that she abused M.T.[1] DAIL advances two arguments. First, DAIL contends that the Board correctly applied collateral estoppel because the probate court's findings addressed the same issue and were part of a final decision made after a contested evidentiary hearing. Second, DAIL posits that the facts of this case, as found by the probate court, corroborate DAIL's abuse substantiation under 33 VSA § 6902(1). We reject both of these arguments.

¶ 10. ■ "Because the applicability of judicially-created doctrines is a question of law outside of the Board's special expertise," the Court reviews the Board's application of collateral estoppel de novo. *In re P.J.*, 2009 VT 5, ¶ 7, 185 Vt. 606, 969 A.2d 133 (mem.). Collateral estoppel applies when five criteria are met:

---

[1] Petitioner does not appeal the removal of legal guardianship of M.T.

(1) the party was involved in the prior action; (2) the issue in the prior action was resolved by "a final judgment on the merits"; (3) the issue in the prior action is the same as the issue raised in the later action; (4) the party had "a full and fair opportunity" to litigate the issue in the prior action; and (5) applying preclusion in the later action is fair. *Trepanier*, 155 Vt. at 265, 583 A.2d at 587. The purpose of collateral estoppel is to conserve court resources "by protecting [the resources] against repetitive litigation, to promote the finality of judgments, to encourage reliance on judicial decisions, and·to decrease the chances of inconsistent adjudication." *In re P.J.*, 2009 VT 5, ¶ 8 (citing *In re Cent. Vt. Pub. Serv. Corp.*, 172 Vt. 14, 20, 769 A.2d 668, 673 (2001)).

¶ 11. ■ The focus here is on the third criterion of collateral ·estoppel, whether the probate court's guardianship termination involved the same issue as the Board's abuse substantiation review. See *In re R.H.*, 2010 VT 95, ¶ 36, 189 Vt. 15, 14 A.3d 267 ("Preclusion is possible only if the issue was 'necessarily and essentially determined in a prior action.'" (quoting *State v. Pollander*, 167 Vt. 301, 305, 706 A.2d 1359, 1361 (1997))); see also *Trahan v. Trahan*, 2003 VT 100, ¶ 8, 176 Vt. 539, 839 A.2d 1246 (mem.) ("To determine whether the second, third, and fourth criteria [of collateral estoppel] are also satisfied, we must identify what is at issue here and what was at issue in the [prior action]."). Issues are separate for collateral estoppel purposes "if the second action involves application of a different legal standard, even though the factual setting of both suits be the same." *Peterson v. Clark Leasing Corp.*, 451 F.2d 1291, 1292 (9th Cir. 1971) (per curiam).

¶ 12. ■ Application of the doctrine of collateral estoppel was inappropriate in this case because the issue in the guardianship termination proceeding was separate and distinguishable from the issue in the abuse substantiation proceeding. During the guardianship termination proceedings, the probate court considered whether there was "a significant risk of serious and irreparable harm to [M.T.] if [petitioner] is not removed as guardian." The probate court made a number of findings about petitioner's inability to find appropriate care, lack of stimulation for M.T. while in petitioner's care, and petitioner's seemingly "harsh" treatment of M.T. The probate court focused on M.T.'s "untenable" living situation resulting from petitioner's inability to provide

the around-the-clock care that M.T. needs. The court concluded that the situation might escalate and result in irreparable harm to M.T. if petitioner was not removed as guardian. The court did not substantiate the abuse allegations. Rather, it addressed whether petitioner had the ability to care for M.T. — an issue entirely distinct from whether petitioner abused petitioner on a given occasion. Compare 14 V.S.A. § 3077(a)(5) (providing that grounds for termination of guardianship include "a change in the capacity or suitability of the guardian for carrying out his or her powers and duties"), with 33 V.S.A. § 6902(1)(A), (B), (E) (defining abuse to include "[a]ny treatment of a vulnerable adult which places life, health, or welfare in jeopardy or which is likely to result in impairment of health"; "[a]ny conduct committed with an intent or reckless disregard that such conduct is likely to cause unnecessary harm, unnecessary pain, or unnecessary suffering to a vulnerable adult"; or "[i]ntentionally subjecting a vulnerable adult to behavior which should reasonably be expected to result in intimidation, fear, humiliation, degradation, agitation, disorientation, or other forms of serious emotional distress").

¶ 13. Moreover, the legal standards and burdens employed in each action were different. See *Peterson*, 451 F.2d at 1292. DAIL argues that this issue is not significant here because the facts surrounding petitioner's treatment of M.T. were central to the probate court's decision. Although the court certainly expressed concern over petitioner's behavior, it did not consider her behavior under the definitions of abuse in 33 V.S.A. § 6902(1). Consequently, the issue in the prior action is not the same as the issue raised in the later action, and the third factor of the *Trepanier* test cannot be satisfied.[2] See *Trahan*, 2003 VT 100, ¶ 8.

¶ 14. DAIL posits that the Board properly applied collateral estoppel because the facts used by the probate court in removing petitioner as guardian are the same facts that resulted in petitioner being placed on the registry, supporting its argument with *In re P.J.*, 2009 VT 5. DAIL's reliance on *P.J.* is misplaced here. In *P.J.*, the Department for Children and Families (DCF) initiated a Child in Need of Services (CHINS) proceeding after E.M., an infant, was hospitalized, found to be nutritionally and medically

---

[2] Because the third factor of collateral estoppel is not met, we need not be detained further with DAIL's argument that the fourth and fifth factors are satisfied here.

neglected, and diagnosed as a failure-to-thrive baby. E.M. remained in his mother's care following the diagnosis under a protective order. The court expected that the CHINS case would be dismissed without adjudication as long as mother complied with the protective order. Before the protective order expired, mother was charged with aggravated assault and cruelty to another child. Consequently, the court adjudicated E.M.'s CHINS case based on mother's stipulation that at the time the CHINS petition was filed, E.M. was a child in need of care and supervision due to mother's own mental health and substance abuse issues. DCF also substantiated the allegations against mother based on her stipulation. The State then filed a petition to terminate mother's parental rights, which was granted by the court and affirmed on appeal. Mother then appealed DCF"s abuse substantiation, and the Board held that she was collaterally estopped from relitigating the issue because the court determined during the termination proceeding that mother neglected E.M. *In re P.J.*, 2009 VT 5, ¶ 5. This Court affirmed, reasoning that the facts underlying the nutritional neglect report were addressed in the CHINS determination, which the mother agreed to. *Id.* ¶ 12.

¶ 15. *P.J.* is distinguishable from the present case because the family court actually determined that the mother nutritionally neglected E.M. and mother agreed to this determination. See *id.* ¶ 9 ("[P]rior to the termination proceeding, the family court necessarily determined that E.M. was a child in need of care or supervision, based upon a stipulation agreed to by mother."). Furthermore, the CHINS determination in *P.J.* substantiating the nutritional neglect was a "final judgment on the merits" because the mother did not appeal it. *Id.* ¶ 11. The critical distinction between *P.J.* and this case lies in the fact that here the probate court did not make a finding of abuse under the statutory definition. In fact, the court never responded to petitioner's request for clarification as to whether her behavior met the statutory definition of abuse.

¶ 16. Alternatively, the State briefly argues that, given the facts found by the probate court and the Board's findings, this Court should conclude as a matter of law that petitioner's treatment of her daughter was abuse as defined in 33 V.S.A. § 6902(1)(A), (B), and (E). We reject this argument. The Board never considered whether petitioner's conduct amounted to abuse because of its ruling that the doctrine of collateral estoppel precluded petitioner

from challenging DAIL's substantiation of abuse. Indeed, the Board made no findings of fact regarding petitioner's conduct but merely quoted facts recited by the probate court. The probate court itself acknowledged that it lacked context as well as the benefit of expert testimony regarding the proper care for someone with M.T.'s disabilities and "very challenging" behavior. In light of our decision that the doctrine of collateral estoppel is inapplicable in this case because the probate court guardianship proceeding addressed a separate and distinct issue from that considered in the abuse substantiation proceeding, we decline to make a determination in the first instance as a matter of law regarding whether petitioner's conduct met the statutory definition of abuse.

*Reversed and remanded.*