2013 VT 89



In re Harwood (2012-110)

 

2013 VT 89

 

[Filed 27-Sep-2013]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 2013 VT 89
 
  


 No. 2012-110
 
  


 In re Catherine Harwood
 
 
 Supreme Court
 
 
  
 
 
  
 
 
  
 
 
 On Appeal from
 
 
  
 
 
 Human Services Board
 
 
  
 
 
  
 
 
  
 
 
 February Term, 2013
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Charles
 Gingo, Chair
 
 
  
 
 Catherine Harwood, Pro Se, Norwich, Appellant.

 

William H. Sorrell, Attorney
General, Montpelier, and Peter Kopsco, Assistant Attorney General,   

  Waterbury,
for Appellee. 

 

 

PRESENT:  Reiber, C.J., Dooley, Skoglund, Burgess and
Robinson, JJ.

 

 

¶ 1.            
BURGESS, J.   Petitioner Catherine Harwood appeals a
Human Services Board decision applying the doctrine of collateral estoppel to
uphold the substantiation of her abuse of a vulnerable adult and thereby placing her name on the adult abuse registry. 
Petitioner argues that she should not be precluded from appealing the abuse
substantiation because she was never given a full and fair opportunity to
challenge the allegations.  We agree, and reverse and remand.   

¶ 2.            
The relevant facts are undisputed.  Petitioner is the mother of
M.T., a thirty-five-year-old woman who has significant developmental
disabilities and is unable to care for herself.  Specifically, M.T.
suffers from severe to profound mental retardation and developmental delay,
epilepsy, bilateral ankle contracture and unsteady gait, premenstrual syndrome,
bilateral strabismus and astigmatism.  M.T. has the cognitive abilities of
a child around twenty months old.  She also has a history of throwing
tantrums and demonstrating self-destructive behavior, such as banging her head
against the wall and biting her arm when she is agitated.  Petitioner was
M.T.’s sole legal guardian and the supervisor of M.T.’s care from April 2010
until the probate court terminated her guardianship in June 2011.  While
she was M.T.’s guardian, petitioner purchased M.T. a home across the street
from her own in Norwich using a trust established with M.T.’s funds for M.T.’s
benefit.  Petitioner also employed two private caregivers, who cared for
M.T. at night. 

¶ 3.            
This case involves two sets of proceedings initiated by the Department
of Disabilities, Aging, and Independent Living (DAIL).  In May 2011, DAIL
received a complaint alleging that one of M.T.’s caregivers had seen petitioner
physically and verbally abuse M.T.  The caregiver, who has no prior
experience or special training in caring for a developmentally disabled adult,
alleged that petitioner pulled M.T. by her hair, yelled at M.T., grabbed and
pulled M.T. by her arm, and put her hand over M.T.’s mouth in a forceful
manner.

¶ 4.            
DAIL investigated the complaint immediately in accordance with 33 V.S.A.
§ 6906.  During its inquiry, DAIL’s investigator interviewed several
of M.T.’s care providers and family members.  Based on the information
gathered, DAIL filed an ex parte motion for immediate removal of petitioner as
M.T.’s legal guardian and for appointment of a successor guardian on June 6,
2011.  That same day, the probate court granted DAIL’s motion on an
emergency basis, removing petitioner as temporary guardian under 14 V.S.A.
§ 3077 and 14 V.S.A. § 3081.  The court found that petitioner
was “unable to meet the health and safety needs of [M.T.].”

¶ 5.            
The probate court held an evidentiary hearing on June 16, 2011 for final
termination of petitioner’s guardianship.  During the hearing, the court
heard from several witnesses, including petitioner, who participated pro
se.  The court removed petitioner as guardian in a written decision
entered on June 22, 2011.  In particular, the court found that petitioner
had not established any services for M.T. and expressed concern over
petitioner’s “reluctan[ce] to accept assistance from
others.”  The court concluded that the “situation could escalate”
and that there was “a significant risk of serious and irreparable harm to
[M.T.]” if petitioner remained M.T.’s guardian.  The court also noted that
it was troubled by petitioner’s “very physical and harsh treatment of [M.T.]
which she did not refute.”

¶ 6.            
Petitioner filed a motion to amend the court’s order on July 6, 2011,
requesting the court to: (1) clarify whether her conduct meets the statutory
definition of abuse in 33 V.S.A. § 6902; (2) strike the court’s order
requiring her to provide the court and other interested parties with a copy of
the trust that she set up with M.T.’s assets; and (3) relieve her from the
court’s order requiring her to maintain responsibility for the payment of
M.T.’s bills and home care.  DAIL opposed the motion, emphasizing its need
for the trust information in order to obtain necessary services for M.T. 
The probate court denied petitioner’s motion on July 22, 2011, reasoning that
there was no legal basis for petitioner’s refusal to provide a copy of the
trust and ordering her to provide the copy and continue to pay all of M.T.’s
bills.  

¶ 7.            
Meanwhile, DAIL had finished its investigation and substantiated
petitioner’s abuse of M.T. in a written report submitted on June 8, 2011. 
Petitioner timely requested an administrative hearing to challenge the finding
of abuse, and the hearing took place on July 15, 2011.  On August 25,
2011, the Deputy Commissioner of DAIL notified petitioner that she was
substantiating the abuse allegations and informed petitioner of her right to
appeal the decision.  Petitioner’s name was added to the state abuse
registry in accordance with 33 V.S.A. § 6911(b).  See In re Appeal
of Tinker, 165 Vt. 621, 622, 686 A.2d 946, 947
(1996) (mem.) (“A substantiated report of abuse as defined by § 6902(1)(A)
does not give rise to criminal penalties; rather, the person found to have
committed the abuse will be included in a registry that can be accessed by
employers . . . who hire individuals to care for elderly or
disabled adults.”).  

¶ 8.            
Petitioner immediately appealed DAIL’s abuse substantiation to the Human
Services Board.  In a February 3, 2012 decision, the Board held that the
doctrine of collateral estoppel barred petitioner from revisiting the issue of
whether she had abused M.T. under the five-part test adopted in Trepanier v.
Getting Organized, Inc., 155 Vt. 259, 265, 583 A.2d 583, 587 (1990). 
The Board reasoned that it was not unfair to deny petitioner the opportunity to
litigate the abuse issue because petitioner was a party in the probate court
proceedings and the probate court’s findings of fact were sufficient to show
that petitioner abused M.T.  Petitioner appeals. 


¶ 9.            
On appeal, petitioner argues that the Board erred in applying the
doctrine of collateral estoppel in this case because she was never given a full
and fair opportunity in the probate court proceeding to challenge the
investigator’s allegations that she abused M.T.[1]  DAIL advances two arguments. 
First, DAIL contends that the Board correctly applied collateral estoppel
because the probate court’s findings addressed the same issue and were part of
a final decision made after a contested evidentiary hearing.  Second, DAIL
posits that the facts of this case, as found by the probate court, corroborate
DAIL’s abuse substantiation under 33 VSA § 6902(1).  We reject both
of these arguments.  

¶ 10.         “Because
the applicability of judicially-created doctrines is a question of law outside
of the Board’s special expertise,” the Court reviews the Board’s application of
collateral estoppel de novo.  In re P.J., 2009 VT
5, ¶ 7, 185 Vt. 606, 969 A.2d 133 (mem).  Collateral estoppel
applies when five criteria are met:  (1) the party was involved in the
prior action; (2) the issue in the prior action was resolved by “a final
judgment on the merits;” (3) the issue in the prior action is the same as the
issue raised in the later action; (4) the party had “a full and fair
opportunity” to litigate the issue in the prior action; and (5) applying
preclusion in the later action is fair.  Trepanier, 155 Vt. at 265,
583 A.2d at 587.  The purpose of collateral
estoppel is to conserve court resources “by protecting [the resources] against
repetitive litigation, to promote the finality of judgments, to encourage
reliance on judicial decisions, and to decrease the chances of inconsistent
adjudication.”  In re P.J., 2009 VT 5, ¶ 8
(citing In re Cent. Vt. Pub. Serv. Corp., 172 Vt. 14, 20, 769 A.2d
668, 673 (2001)). 

¶ 11.         The
focus here is on the third criterion of collateral estoppel, whether the
probate court’s guardianship termination involved the same issue as the Board’s
abuse substantiation review.  See In re R.H., 2010 VT 95,
¶ 36, 189 Vt. 15, 14 A.3d 267 (“Preclusion is possible only if the issue
was ‘necessarily and essentially determined in a prior action.’ ” (quoting
State v. Pollander, 167 Vt. 301, 305, 706 A.2d 1359, 1361 (1997))); see
also Trahan v. Trahan, 2003 VT 100, ¶ 8, 176 Vt. 539, 839 A.2d 1246
(“To determine whether the second, third, and fourth criteria [of
collateral estoppel] are also satisfied, we must identify what is at issue here
and what was at issue in the [prior action].”).  Issues are separate for
collateral estoppel purposes “if the second action involves application of a
different legal standard, even though the factual setting of both suits be the same.”  Peterson v. Clark
Leasing Corp., 451 F.2d 1291, 1292 (9th Cir. 1971) (per curiam).

¶ 12.         Application
of the doctrine of collateral estoppel was inappropriate in this case because
the issue in the guardianship termination proceeding was separate and
distinguishable from the issue in the abuse substantiation proceeding. 
During the guardianship termination proceedings, the probate court considered
whether there was “a significant risk of serious and irreparable harm to [M.T.]
if [petitioner] is not removed as guardian.”  The probate court made a
number of findings about petitioner’s inability to find appropriate care, lack
of stimulation for M.T. while in petitioner’s care, and petitioner’s seemingly
“harsh” treatment of M.T.  The probate court focused on M.T.’s “untenable”
living situation resulting from petitioner’s inability to provide the
around-the-clock care that M.T. needs.  The court concluded that the
situation might escalate and result in irreparable harm to M.T. if petitioner
was not removed as guardian.  The court did not substantiate the abuse
allegations.  Rather, it addressed whether petitioner had the ability to
care for M.T.—an issue entirely distinct from whether petitioner abused
petitioner on a given occasion.  Compare 14 V.S.A. § 3077(a)(5)
(providing that grounds for termination of guardianship include “a change in
the capacity or suitability of the guardian for carrying out his or her powers
and duties”), with 33 V.S.A. § 6902(1) (defining abuse to  include
“[a]ny treatment of a vulnerable adult which places life, health, or welfare in
jeopardy or which is likely to result in impairment of health”; “[a]ny conduct
committed with an intent or reckless disregard that such conduct is likely to
cause unnecessary harm, unnecessary pain, or unnecessary suffering to a
vulnerable adult”; or “[i]ntentionally subjecting a vulnerable adult to
behavior which should reasonably be expected to result in intimidation, fear, humiliation,
degradation, agitation, disorientation, or other forms of serious emotional
distress”).  

¶ 13.         Moreover,
the legal standards and burdens employed in each action were different. 
See Peterson, 451 F.2d at 1292.  DAIL
argues that this issue is not significant here because the facts surrounding
petitioner’s treatment of M.T. were central to the probate court’s
decision.  Although the court certainly expressed concern over
petitioner’s behavior, it did not consider her behavior under the definitions
of abuse in 33 V.S.A. § 6902(1).  Consequently, the issue in the prior
action is not the same as the issue raised in the later action, and the third
factor of the Trepanier test cannot be satisfied.[2]  See Trahan, 2003 VT 100,
¶ 8.  

¶ 14.         DAIL
posits that the Board properly applied collateral estoppel because the facts
used by the probate court in removing petitioner as guardian are the same facts
that resulted in petitioner being placed on the registry, supporting its
argument with In re P.J., 2009 VT 5.  DAIL’s reliance on P.J.
is misplaced here.  In P.J., the Department of Children and
Families (DCF) initiated a Child in Need of Services (CHINS) proceeding after
E.M., an infant, was hospitalized, found to be nutritionally and medically
neglected, and diagnosed as a failure-to-thrive baby.  E.M. remained in
his mother’s care following the diagnosis under a protective order.  The
court expected that the CHINS case would be dismissed without adjudication as long
as mother complied with the protective order.  Before the protective order
expired, mother was charged with aggravated assault and cruelty to another
child.  Consequently, the court adjudicated E.M.’s CHINS case based on
mother’s stipulation that at the time the CHINS petition was filed, E.M. was a
child in need of care and supervision due to mother’s own mental health and
substance abuse issues.  DCF also substantiated the allegations against
mother based on her stipulation.  The State then filed a petition to
terminate mother’s parental rights, which was granted by the court and affirmed
on appeal.  Mother then appealed DCF’s abuse substantiation, and the Board
held that she was collaterally estopped from re-litigating the issue because
the court determined during the termination proceeding that mother neglected
E.M.  In re P.J., 2009 VT 5, ¶ 5.  This Court
affirmed, reasoning that the facts underlying the nutritional neglect report
were addressed in the CHINS determination, which the mother agreed to.  Id. ¶ 12. 

¶ 15.         P.J.
is distinguishable from the present case because the family court actually
determined that the mother nutritionally neglected E.M. and mother agreed to
this determination.  See id. ¶ 9 (“[P]rior to the termination
proceeding, the family court necessarily determined that E.M. was a child in
need of care or supervision, based upon a stipulation agreed to by
mother.”).  Furthermore, the CHINS determination in P.J.
substantiating the nutritional neglect was a “final judgment on the merits”
because the mother did not appeal it.  Id. ¶ 11. 
The critical distinction between P.J. and this case lies in the fact
that here the probate court did not make a finding of abuse under the statutory
definition.  In fact, the court never responded to petitioner’s request
for clarification as to whether her behavior met the statutory definition of
abuse.  

¶ 16.         Alternatively,
the State briefly argues that, given the facts found by the probate court and
the Board’s findings, this Court should conclude as a matter of law that
petitioner’s treatment of her daughter was abuse as defined in 33 V.S.A. §
6902(1)(A), (B), and (E).  We reject this argument.  The Board never
considered whether petitioner’s conduct amounted to abuse because of its ruling
that the doctrine of collateral estoppel precluded petitioner from challenging
DAIL’s substantiation of abuse.  Indeed, the Board made no findings of
fact regarding petitioner’s conduct but merely quoted facts recited by the
probate court.  The probate court itself acknowledged that it lacked
context as well as the benefit of expert testimony regarding the proper care
for someone with M.T.’s disabilities and “very challenging” behavior.  In
light of our decision that the doctrine of collateral estoppel is inapplicable
in this case because the probate court guardianship proceeding addressed a
separate and distinct issue from that considered in the abuse substantiation
proceeding, we decline to make a determination in the first instance as a
matter of law regarding whether petitioner’s conduct met the statutory
definition of abuse.

Reversed and
remanded.

 


  
 
 
  
 
 
 FOR THE COURT:
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Associate
 Justice
 
  











[1] 
Petitioner does not appeal the removal of legal guardianship of M.T.  





[2]
 Because the third factor of collateral estoppel is not met, we need not
be detained further with DAIL’s argument that the fourth and fifth factors are
satisfied here.