NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2022 VT 31

No. 21-AP-249

In re Appeal of M.V.                                    Supreme Court

                                                        On Appeal from
                                                        Human Services Board

                                                        April Term, 2022


Michael J. Donohue, Chair

Alexander M. Dean of Barr, Sternberg, Moss, Silver & Munson, P.C., Bennington, for
  Appellant M.V.

Thomas J. Donovan, Jr., Attorney General, and Robert F. McDougall, Assistant Attorney
  General, Montpelier, for Appellee Department for Children and Families.


PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.


¶ 1. **CARROLL, J.** Petitioner M.V. appeals an order of the Human Services Board granting summary judgment to the Department for Children and Families (DCF) regarding DCF's decision to substantiate him for child abuse. Petitioner argues that the same underlying facts to which he admitted when he pleaded guilty to criminal charges of child-pornography possession cannot substantiate a report of child abuse. He contends that the Board applied the wrong legal standard because it did not require DCF to prove the existence of identifiable child victims or to establish a relationship between himself and each child. We affirm.

## I. Factual Background

¶ 2. In November 2019, petitioner pleaded guilty to two counts of possession of child pornography, one for each photograph he downloaded from a social-media platform, in violation of 13 V.S.A. § 2827(a). He signed a plea agreement that imposed consecutive sentences resulting in a total of two-to-four years to serve, all suspended, with ten years of probation. The plea agreement recognized that the convictions would require petitioner to register as a sex offender.[1] At his change-of-plea hearing, petitioner admitted to knowingly possessing two photographs, each depicting prepubescent girls in sexually suggestive positions. The photographs focused on the children's genitalia.[2] The plea judge found that petitioner was not coerced into accepting the plea agreement, voluntarily admitted he understood the elements in the charges and the factual basis underlying each, and waived his right to a jury trial.

¶ 3. Meanwhile, the State reported the underlying evidence to DCF. DCF investigates reports of child abuse and neglect, which may culminate in a substantiated report. 33 V.S.A. §§ 4915, 4915a, 4915b. To substantiate a report of child abuse, DCF must demonstrate that it has obtained "accurate and reliable information that would lead a reasonable person to believe that the child has been abused or neglected." Id. § 4912(16). If a report is substantiated, DCF places the person's name on the child protection registry. Id. § 4916. Access to the registry is restricted to entities provided for by statute and to specific employers who hire individuals "providing care, custody, treatment, transportation, or supervision of children or vulnerable adults." Id. § 4919.

---

[1] The sex offender registry is governed by 13 V.S.A. ch. 167, subch. 3, and is distinct from the child protection registry.

[2] The State's amended information for both charges reads: "[Petitioner] . . . with knowledge of the character and content, possessed a photograph, film or visual depiction, including any depiction which is stored electronically, of a clearly lewd exhibition of a child's genitals or anus, in violation of 13 V.S.A. § 2827(a)."

2

¶ 4.     In August 2019, DCF substantiated petitioner "for sexual abuse by [his] possession of child pornography." Petitioner challenged that determination, and following a November 2020 teleconference, a neutral DCF reviewer affirmed the substantiation. Thereafter, petitioner timely appealed to the Board pursuant to § 4916b(a).

¶ 5.     DCF filed a summary-judgment motion claiming that petitioner was collaterally estopped from contesting the facts on which DCF relied to substantiate him. DCF argued that the issue in the criminal proceeding was the same issue before the Board—whether petitioner possessed child pornography. Moreover, DCF asserted, petitioner admitted to the same facts during the plea colloquy that it had relied on to substantiate him.

¶ 6.     Petitioner responded that the statutory framework governing substantiation requires an identifiable victim and a caretaking relationship between himself and each victim. According to petitioner, the mere possession of child pornography cannot substantiate a report of child abuse. On the other hand, criminal possession of child pornography does not require the State to prove the existence of an identifiable victim nor that a defendant had a caretaking relationship with the victim. Therefore, petitioner argues, he was not collaterally estopped from contesting the factual basis of his substantiation because the issue of whether he admitted to possessing child pornography of an identifiable child victim and whether he had a caretaking relationship with the children was not raised in the criminal action.

¶ 7.     After holding a hearing on DCF's motion, the Board granted summary judgment in DCF's favor. It first addressed petitioner's claim that mere possession of child pornography without identifiable victims cannot substantiate a report of child abuse under Title 33. The Board explained that 33 V.S.A. § 4912(1) defines an "abused or neglected child" in part as "a child who is sexually abused or at substantial risk of sexual abuse by any person." In turn, § 4912(15)(G) defines sexual abuse as "any act or acts by any person involving the sexual molestation or exploitation of a child, including . . . viewing, possessing, or transmitting child pornography . . . ."

3

The Board cited a DCF policy affirming that "any person" who possesses child pornography "can be substantiated for sexual abuse." The policy expressly excludes the requirement that a person needs to be a parent or other person responsible for the child's welfare for DCF to substantiate that person for sexual abuse. On these bases, the Board concluded that Title 33 does not require DCF to prove that petitioner had a relationship with the children in the two photographs, nor does it require DCF to identify the child victims. The Board determined that "the legal standard regarding substantiation is whether petitioner engaged in sexual abuse by possessing two photos of child pornography on his computer." Based on the record evidence, the Board concluded that DCF had met its burden demonstrating petitioner possessed child pornography.

¶ 8.     Turning to collateral estoppel, the Board analyzed each of the elements this Court announced in Trepanier v. Getting Organized, Inc. that govern the application of the doctrine. 155 Vt. 259, 583 A.2d 583 (1990). It found that each was satisfied and concluded that DCF was entitled to summary judgment as a matter of law.

¶ 9.     Petitioner renews his arguments on appeal. He argues that DCF cannot substantiate him for child abuse based on his guilty plea to child-pornography possession depicting unidentified victims because Title 33 requires DCF to identify the child victims and demonstrate a caretaking relationship. He maintains the issue in the criminal prosecution is therefore different than the issue in the substantiation proceeding. Because the issues are distinct, petitioner argues, he is not collaterally estopped from relitigating the factual basis underlying the criminal convictions, and the Board deprived him of an opportunity to do so in a fair hearing.

¶ 10.    We hold that Title 33 provides that the mere possession of child pornography constitutes sexual abuse, which in turn is sufficient to substantiate petitioner for child abuse. We also hold that petitioner is collaterally estopped from contesting whether his guilty pleas to criminal possession of child pornography can form the basis to substantiate him for child abuse and placement on the child protection registry.

4

## II. Substantiation

### A. Standard of Review

¶ 11.  "[W]e defer to the Board's decision regarding substantiation on appeal." In re R.H., 2010 VT 95, ¶ 21, 189 Vt. 15, 14 A.3d 267.  "Our review is thus limited to determining whether the Board applied the proper legal standard, whether the evidence before the Board reasonably supports its findings, and whether the Board's findings reasonably support its conclusions."  In re E.C., 2010 VT 50, ¶ 6, 188 Vt. 546, 1 A.3d 1007 (mem.).

### B. Legal Standard

¶ 12.  The question presented is whether the statutes governing substantiation require DCF to identify child victims of pornography and the existence of a caretaking relationship between petitioner and each child.  Chapter 49 of Title 33 is divided into two subchapters: the first sets out "General Provisions"; the second governs "Reporting Abuse of Children."  33 V.S.A. ch. 49.  Subchapter 2 provides two definitions of what constitutes "an abused or neglected child":

> "An abused or neglected child" is a child whose physical health, psychological growth and development, or welfare is harmed or is at substantial risk of harm by the acts or omissions of his or her parent or other person responsible for the child's welfare.  An "abused or neglected child" also means a child who is sexually abused or at substantial risk of sexual abuse by any person and a child who has died as a result of abuse or neglect.

33 V.S.A. § 4912(1).  The Legislature subsequently defines sexual abuse as consisting "of any act or acts by any person involving sexual molestation or exploitation of a child, including . . . viewing, possessing, or transmitting child pornography . . . ."  Id. § 4912(15)(G).

¶ 13.  Separately, § 4916a lays out the process by which persons alleged to have abused or neglected a child can challenge their placement on the registry, including providing for an administrative-review conference conducted by "a neutral and independent arbiter who has no prior involvement in the original investigation."  Id. § 4916a(f).  To prevail at this stage (and on appeal before the Board), DCF bears "the burden of proving that it has accurately and reliably

5

concluded that a reasonable person would believe that the child has been abused and neglected by that person." Id. § 4916a(e).

¶ 14. Petitioner's first argument is that the Board did not apply the correct legal standard in upholding DCF's substantiation determination. The Board, after reviewing the plain language of subchapter 2, concluded that "the legal standard regarding substantiation [in this case] is whether petitioner engaged in sexual abuse by possessing two photos of child pornography on his computer." However, petitioner argues that DCF bears the burden of identifying the child victims in the photographs and proving he had a relationship with them because § 4916a(e) contains the terms "the child" and "that person." He claims these terms reinforce the overarching goal of subchapter 2, which is to protect identifiable children. Petitioner asserts that the alternate definition in § 4912(1) of an abused or neglected child, which provides that "any person" who sexually abuses a child can also be substantiated for child abuse, "does not abrogate" DCF's burden to identify a victim and establish a relationship between victim and petitioner. Therefore, according to him, the Board's interpretation of the substantiation statutes was error because it did not require DCF to make either showing.

¶ 15. We begin with the plain language of this statutory framework. In re E.C., 2010 VT 50, ¶ 8 ("Our first recourse when interpreting a statute is to look at the plain language of the enactment."); see also State v. A.P., 2021 VT 90, ¶ 12, __ Vt. __, 268 A.3d 58 ("If the intent of the Legislature is apparent on the face of the statute because the plain language of the statute is clear and unambiguous, we implement the statute according to that plain language." (quotation omitted)). The Legislature provided two distinct definitions of an abused or neglected child in § 4912(1). The first sentence provides: "An 'abused or neglected child' means a child whose physical health, psychological growth and development, or welfare is harmed or is at substantial risk of harm by the acts or omissions of his or her parent or other person responsible for the child's welfare." 33 V.S.A. § 4912(1). The second sentence provides: "An 'abused or neglected child'

6

also means a child who is sexually abused or at substantial risk of sexual abuse by any person and a child who has died as a result of abuse or neglect." Id. (emphasis added). The second sentence expands the definition of who is considered an abused or neglected child. In addition to those harmed by parents and persons responsible for a child's welfare, a child who suffers sexual abuse by any person is also an abused or neglected child.

¶ 16. Petitioner concedes that mere possession of child pornography is defined as sexual abuse under § 4912(15)(G). However, he maintains that this does not automatically mean he has abused or neglected a child under § 4912(1). He asserts that § 4916a(e) requires DCF to prove he had a relationship with identifiable child victims depicted in the photographs to substantiate him.

¶ 17. Section 4916a(e) does not transform DCF's burden in this way. The term "that person" in § 4916a(e) refers to the person being substantiated for child abuse. Here, petitioner is "that person" because he is both the subject of substantiation proceedings and because "that person" includes "any person" who sexually abuses a child under the definition set forth in § 4912(1). See State v. A.P., 2021 VT 90, ¶ 12 ("We do not read statutory language in isolation; we read and construe together the whole and every part of the statute, together with other statutes standing in pari materia with it, as parts of a unified statutory system." (quotation omitted)). While "that person" may also refer to the parents or other persons responsible for a child's welfare under the first definition in § 4912(1), it does not follow that the Legislature intended a relationship requirement in the second definition. See State v. Hale, 2021 VT 18, ¶ 14, __ Vt. __, 256 A.3d 595 ("It is a well-settled principle of statutory construction that we will not read words into a statute that are not there, unless it is necessary in order to make the statute effective." (quotation and alteration omitted)).

¶ 18. Petitioner likewise asserts that the term "the child" in § 4916a(e) is further evidence that DCF must prove he had a relationship with the children depicted in the two photographs. As above, we do not read words into a statute that are not there. Hale, 2021 VT 19, ¶ 14. Section

7

4916a(e) requires DCF to prove an allegation of child abuse such "that a reasonable person would believe that the child has been abused." Here, "the child" refers to the subject of the abuse. The term is not a separate requirement to identify the child. As defined, possessing child pornography is sexual abuse. Id. § 4912(15)(F). Sexual abuse of a child by any person is child abuse. Id. § 4912(1). Accordingly, DCF must prove that a reasonable person would believe that it has accurately and reliably substantiated a report that petitioner possessed pornographic materials depicting a child.[3]

¶ 19. Our conclusion is further supported by the presence of an additional provision defining sexual abuse as the production of child pornography in § 4912(15)(F). Subsection F provides that a person commits sexual abuse by "aiding, abetting, counseling, hiring, or procuring a child to perform or participate in any photograph, motion picture, exhibition, show, representation, or other presentation that, in whole or in part, depicts sexual conduct, sexual excitement, or sadomasochistic abuse involving a child." Id. We have not before addressed § 4912(15)(F), and we express no opinion about it here. However, that the Legislature separately included this definition indicates it knows the difference between producing child pornography and "viewing, possessing, or transmitting" child pornography, and the resulting legal standards under each. See State v. DeRosa, 161 Vt. 78, 80, 633 A.2d 277, 279 (1993) ("[W]e presume the Legislature used the language [in the statute] advisedly.").

¶ 20. Petitioner next contends that the Board's legal standard is at odds with the statute's purpose to "protect children whose health and welfare may be adversely affected through abuse and neglect." 33 V.S.A. § 4911(1). We discern nothing in the Board's interpretation contravening the statute's purpose. See In re R.H., 2010 VT 95, ¶ 21 ("[W]e defer to the Board's decision regarding substantiation on appeal."). The Legislature created a framework in which merely

_____

[3] A child is defined as "an individual under the age of majority." 33 V.S.A. § 4912(3).

8

possessing child pornography is child abuse, and the consequence is placement on the child protection registry. The Legislature selected placement on the registry as one method to "protect children whose health and welfare may be adversely affected through abuse and neglect." 33 V.S.A. § 4911(a). Moreover, the purpose behind this framework aligns with the view held by most—if not all—jurisdictions that possession of child pornography constitutes a "direct and primary emotional harm" to the children depicted. United States v. Sherman, 268 F.3d 539, 547 (7th Cir. 2001) (collecting cases); see also Paroline v. United States, 572 U.S. 434, 457 (2014) ("It is common ground the victim [depicted in child pornography] suffers continuing and grievous harm as a result of [their] knowledge that a large, indeterminate number of individuals have viewed and will in the future view images of the sexual abuse [they] endured. . . . The unlawful conduct of everyone who . . . possesses the images . . . plays a part in sustaining and aggravating this tragedy.").

¶ 21. Finally, petitioner argues that the statutory framework is ambiguous, and therefore we should resolve any ambiguity in his favor under the rule of lenity. See State v. Hurley, 2015 VT 46, ¶ 17, 198 Vt. 552, 117 A.3d 433 (describing rule as "principle that requires that any doubts created by ambiguous legislation be resolved in favor of the defendant and construed against the [S]tate" (quotation omitted)); see also Doe v. La. Bd. of Ethics, 112 So. 3d 339, 347 (La. Ct. App. 2013) (stating rule of lenity "applies to both criminal laws and civil statues of a penal nature").

¶ 22. Petitioner's argument fails for two reasons. First, the statutes governing child-abuse substantiation fall within DCF's area of expertise; therefore, we and the Board must defer to DCF's interpretation. In re R.H., 2010 VT 95, ¶ 29 (quotation omitted). Moreover, we will not find ambiguity unless we first detect a "compelling indication of . . . error" in DCF's interpretation of the registry statutes. Shires Hous., Inc. v. Brown, 2017 VT 60, ¶ 9, 205 Vt. 186, 172 A.3d 1215 (explaining that this Court sustains interpretation of statute "by an administrative body responsible for its execution" unless interpretation "unjust or unreasonable"); see In re S-S Corp./Rooney

9

Hous. Devs., 2006 VT 8, ¶ 13, 179 Vt. 302, 896 A.2d 67 ("We will not equate a grant of agency discretion with ambiguity . . . ."). The Board has made no error, and its interpretation of these statutes aligns with DCF's. The Board correctly interpreted subsection 2 by looking at the plain language and analyzed the undisputed facts using the legal standard for substantiating petitioner.[4]

¶ 23. Second, the rule of lenity only applies where the statutory language is ambiguous. Hurley, 2015 VT 46, ¶ 17 ("The rule of lenity does not apply if the statutory language is unambiguous . . . . (quotation omitted)); La. Bd. of Ethics, 112 So. 3d at 347 (explaining rule of lenity "applies to both criminal laws and civil statutes of a penal nature"). Because this statutory framework is unambiguous, the rule of lenity is inapplicable.

### III. Collateral Estoppel

¶ 24. Petitioner's next claim is in large measure predicated on his first: he maintains that collateral estoppel does not apply to him because substantiation requires an identifiable victim and a caretaking relationship, and criminal child-pornography possession does not. He argues that the issue presented in the substantiation proceeding is not the same issue in the criminal prosecution. Therefore, he contends, the Board erred by applying collateral estoppel.

### A. Standard of Review

¶ 25. We have previously held that the Board may apply collateral estoppel in substantiation proceedings. In re P.J., 2009 VT 5, ¶ 7, 185 Vt. 606, 969 A.2d 133 (mem.). However, because its application falls outside the Board's "special expertise," we review the Board's use of collateral estoppel de novo. Id.

---

[4] We note that DCF's own interpretation of subsection 2 aligns with the Board's interpretation. DCF Policy 56 provides in part: "Any person may be substantiated for sexually abusing a child," which includes those persons possessing child pornography. Vt. Dept. for Child. & Fams., Fam. Servs. Pol'y Manual, Policy No. 56 (Oct. 14, 2020), https://dcf.vermont.gov/sites/dcf/files/FSD/Policies/56.pdf [https://perma.cc/Q2ZC-2JWJ]; cf. In re Porter, 2012 VT 97, ¶ 8, 192 Vt. 601, 70 A.3d 915 ("We defer to an administrative agency's interpretation of statutory provisions that are within its particular area of expertise." (quotation omitted).

## B. Crossover Collateral Estoppel

¶ 26.    Collateral estoppel, also called issue preclusion, "bars a party from relitigating an issue decided in a previous action." State v. Pollander, 167 Vt. 301, 304, 706 A.2d 1359, 1361 (1997) (quotation omitted). "The underlying goal of . . . collateral estoppel[] is to promote judicial economy and finality in litigation." Allstate Ins. Co. v. Blount, 491 F.3d 903, 909 (8th Cir. 2007) (quotation omitted). We articulated the factors courts should use to analyze collateral estoppel in Trepanier. 155 Vt. 259, 583 A.2d 583. Collateral estoppel will bar the subsequent litigation of an issue when the following factors are met:

> (1) preclusion is asserted against one who was a party or in privity with a party in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the issue is the same as the one raised in the later action; (4) there was a full and fair opportunity to litigate the issue in the earlier action; and (5) applying preclusion in the later action is fair.

Id. at 265, 583 A.2d at 588 (citing Bernhard v. Bank of Am. Nat'l. Tr. & Sav. Ass'n, 122 P.2d 892 (Ca. 1942)). "The party opposing application of collateral estoppel has the burden of showing that it is appropriate to relitigate an issue." In re P.J., 2009 VT 5, ¶ 13.

¶ 27.    This Court has previously addressed the issue of crossover estoppel—the situation where an issue litigated in a civil action bars the relitigation of the same issue in a subsequent criminal action. See, e.g., State v. Stearns, 159 Vt. 266, 272, 617 A.2d 140, 143 (1992) (holding that State was not precluded from introducing evidence in subsequent DUI trial after being prevented from introducing same evidence in less formal administrative-suspension proceeding); see also State v. Brunet, 174 Vt. 135, 143, 806 A.2d 1007, 1013 (2002) (holding that State was not precluded from prosecuting defendant following probation-revocation proceedings decided adversely to State). In both Stearns and Brunet, we held that collateral estoppel did not apply against the State in subsequent criminal actions where the earlier civil proceedings had more relaxed evidentiary and procedural requirements.

11

¶ 28. In State v. Pollander, we addressed the question of whether an acquittal in a jury trial precluded the State from relitigating the same issue in a subsequent civil action. 167 Vt. 301, 706 A.2d 1359. We held that the State's failure to prove at trial that the defendant's BAC was 0.08% did not preclude the State from relitigating the same issue in a subsequent civil-suspension hearing. Id. at 306-07, 706 A.2d at 1362. We reasoned that collateral estoppel was not appropriate under those circumstances because "what cannot be proven beyond a reasonable doubt may still be proven by a preponderance of the evidence." Id. at 306, 706 A.2d at 1362. However, we have never addressed the situation we are presented with here: whether a guilty plea in a criminal prosecution has preclusive effect in subsequent civil actions. We address this question first.

### C. Collateral-Estoppel Effect of a Guilty Plea[5]

¶ 29. Petitioner contends that guilty pleas cannot have collateral-estoppel effect because issues resolved by guilty pleas are not "actually litigated." He urges the Court to adopt the Restatement (Second) of Judgments which does not consider an issue to have been actually litigated in the first action "where the criminal judgment was based on . . . a guilty plea . . . ."[6] Restatement (Second) of Judgments § 85 cmt. b (1982); but see Pollander, 167 Vt. at 305, 706 A.2d at 1361 (citing Restatement § 28(4) which states that no preclusion applies where "party

---

[5] For the purposes of this opinion, we use "collateral-estoppel effect" and "preclusive effect" interchangeably.

[6] Comment b to § 85 reads as follows:

> The rule of this Section presupposes that the issue in question was actually litigated in the criminal prosecution. Accordingly, the rule of the Section does not apply where the criminal judgment was based on . . . a guilty plea . . . . A defendant who pleads guilty may be held to be estopped in subsequent civil litigation from contesting facts representing the elements of the offense. However, under the terms of this Restatement such an estoppel is not a matter of issue preclusion, because the issue has not actually been litigated, but is a matter of the law of evidence beyond the scope of this Restatement.

12

against whom preclusion is sought had a significantly heavier burden of persuasion with the issue in the initial action than in the subsequent action").

¶ 30.    Courts are split on this issue.  One line of cases, following an Iowa Supreme Court decision, Ideal Mutual Insurance Co. v. Winker, adopts the view that there is no actual-litigation requirement.  319 N.W.2d 289, 291-96 (Iowa 1982) (explaining that courts relying on reasoning in Restatement to deny preclusive effect to guilty pleas do not read Restatement closely); see also James v. Paul, 49 S.W.3d 678, 686-87 (Mo. 2001) (en banc) (affirming issue preclusion following guilty plea and noting that "an almost equal number of states" give preclusive effect to guilty pleas as states that do not); see also Allen v. Martin, 203 P.3d 546, 562-563 (Colo. App. 2008) (same). Another line of cases adopts the opposite view: because the criminal prosecution did not proceed to trial, the issue was not actually litigated, and precluding the defendant from later relitigating the issue is unfair.  See, e.g., Mrozek v. Intra Fin. Corp., 2005 WI App 73, ¶¶ 17-21, 281 Wis. 2d 448, 699 N.W.2d 54, 61-63 (declining to follow Paul and Winker because under Wisconsin law "a defendant who pleads guilty need not admit the facts of a crime that has been charged as a precondition to a court accepting his or her plea" and therefore issue was not actually litigated); see also Teitelbaum Furs, Inc. v. Dominion Ins. Co., 375 P.2d 439, 441 (Cal. 1962) (in bank) ("When a plea of guilty has been entered in the prior action, no issues have been 'drawn into controversy' by a 'full presentation' of the case.  It may reflect only a compromise or a belief that paying a fine is more advantageous than litigation.  Considerations of fairness to civil litigants and regard for the expeditious administration of criminal justice . . . combine to prohibit the application of collateral estoppel against a party who, having pleaded guilty to a criminal charge, seeks for the first time to litigate his cause in a civil action.").

¶ 31.    Some prominent commentators also share the view that guilty pleas should not have preclusive effect.  For example, Wright and Miller sharply criticize courts' application of collateral estoppel to guilty pleas because "[t]he lack of actual adjudication is fatal to issue preclusion."  18B

13

C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4474.1 (3d ed. 2019). "Just as issue preclusion should not rest on civil judgments by consent, stipulation, or default, so it should not rest on a plea of guilty."[7] Id.

¶ 32.   However, we reject the view that a guilty plea cannot have collateral-estoppel effect.  We find the Iowa Supreme Court's decision in Ideal Mutual Insurance Co. v. Winker to be instructive.  319 N.W.2d 289.  In that case, Winker, a law enforcement officer, shot and killed his estranged girlfriend while off-duty.  Winker was covered by professional liability insurance at the time he committed the crime.  The state charged him with first-degree murder, but he ultimately pleaded guilty to second-degree murder.  Later, the administrator of the decedent's estate brought a civil action alleging wrongful death.  In response, Ideal, Winker's insurer, filed a declaratory action arguing that it was not required to defend him in the wrongful-death action nor indemnify him if the administrator prevailed.  Ideal argued that criminal conduct was exempt activity under the policy and Winker's "guilty plea conclusively established for purposes of the declaratory action that [he] had committed a criminal act."  Id. at 291.  The trial court agreed.  Winker appealed, arguing that he only entered the guilty plea "because of the risk of a first-degree murder conviction and not because he admitted second-degree murder."  Id.

¶ 33.   In a close examination of the case law, the Restatement,[8] and the work of several prominent commentators, the supreme court held that guilty pleas can have preclusive effect in

---

[7] Petitioner, citing comment e to § 27 of the Restatement, argues that collateral estoppel should not apply to him because a guilty plea is a judgment obtained by "confession, consent, or default." See Restatement (Second) of Judgments § 27 cmt. e. However, as the quote from Wright and Miller suggests, this language in comment e does not refer to guilty pleas, ; it refers to civil actions.

[8] The supreme court explained that the Restatement did not oppose the application of collateral estoppel to issues resolved by guilty pleas. Winker, 319 N.W.2d at 291-94. In the same comment petitioner points to while arguing the opposite, the Restatement explains that "[a] defendant who pleads guilty may be held to be estopped in subsequent civil litigation from contesting facts representing the elements of the offense." Restatement (Second) of Judgments § 85 cmt. b. The Restatement treated "such an estoppel [as] not a matter of issue preclusion,

civil actions. The supreme court explained that the requirement for trial courts to first ascertain a factual basis for the guilty plea serves both to convince a court that a guilty plea is founded on fact and that "a judicial determination has thus been made with respect to the essential elements of the crime." Id. at 295. Accordingly, a guilty plea satisfies the requirement that the "issue must have been raised and litigated in the prior action." Id. at 294; see also In re Harwood, 2013 VT 89, ¶ 11, 195 Vt. 7, 86 A.3d 976 ("Preclusion is possible only if the issue was necessarily and essentially determined in a prior action." (quotation omitted)). The supreme court noted that its conclusion squared with the Restatement's underlying rationale that preclusion is only appropriate where "the parties have obtained a judicial determination of an issue following the exploration of that issue through the litigative process." 319 N.W.2d at 296 (citing Restatement (Second) of Judgments § 68 cmt. d). The court reasoned that just as judgments following trial, and dispositive motions such as motions to dismiss, all have issue-preclusive effect, there was no reason why the factual-basis requirement for a guilty plea should not also. Id. We agree.

¶ 34. Vermont has robust safeguards in place for trial courts to accept guilty pleas. The overarching goal of Vermont Rule of Criminal Procedure 11 is to ensure that a defendant voluntarily admits guilt before the court enters a guilty verdict. See In re Dunham, 144 Vt. 444, 451, 479 A.2d 144, 148 (1984). We recently clarified that Criminal Rule 11(f) requires the defendant to "personally admit[] to facts relating to the elements of the offense." In re Bridger, 2017 VT 79, ¶ 22, 205 Vt. 380, 176 A.3d 489. By ensuring the defendant's personal admission, "the court exposes the defendant's understanding of the factual basis for each element on the

_____

because the issue has not actually been litigated, but [as] a matter of the law of evidence beyond the scope of this Restatement." Id. The Winker court explained that the Restatement had to take this position because of its theory of actual adjudication. See 319 N.W.2d at 292 ("In sum, the [Restatement] recognizes that a guilty plea can be conclusive in a civil suit, but it is forced to conclude that this result is beyond the scope of issue preclusion to maintain consistency with its 'actual litigation' requirement.").

record, which facilitates the court's understanding of the facts and provides subsequent courts with the opportunity to review the record to establish that the defendant's plea was truly voluntary." [9] Id. We explained that strict adherence to Rule 11, including requiring the defendant to affirmatively acknowledge the factual basis underlying the charge against him, makes it less likely that false guilty pleas will occur. Id. Additionally, the Reporter's Notes for Rule 11 explain that pleas of nolo contendere are permitted in part to allow defendants "to avoid the preclusive effect of a guilty plea or conviction upon a plea of not guilty in later civil or criminal litigation." Reporter's Notes, V.R.Cr.P. 11.

¶ 35. For these reasons, we conclude that a guilty plea may have collateral-estoppel effect in subsequent civil proceedings.[10] We now turn to the Trepanier elements to determine whether the Board correctly applied collateral estoppel in this case.

### D. Trepanier Elements

¶ 36. The first Trepanier element asks whether the party against whom preclusion is asserted was a party in the earlier action. 155 Vt. at 265, 583 A.2d at 587. Petitioner does not dispute that he was a party in the criminal proceeding. Thus, the first element is met.

¶ 37. The second Trepanier element asks whether the issue was resolved in the earlier action by a final judgment on the merits. Id.; see also Trahan v. Trahan, 2003 VT 100, ¶ 8, 176

---

[9] We note that petitioner entered his guilty pleas on November 19, 2019, long after Bridger issued.

[10] Two civil division decisions have addressed this precise issue. Normandy v. Martin, No. S0278-04 CnC, (Vt. Super. Ct. Jan. 11, 2005), https://www.vermontjudiciary.org/sites /default/files/documents/2005-9-20-2.pdf [https://perma.cc/M33C-4QAC]; Geico Gen. Ins., Co. v. Cota, No. 490-4-17 Cncv, (Vt. Super. Ct. Oct. 2, 2018), https://www.vermontjudiciary.org/sites/ default/files/documents/2019-6-7-13.pdf [https://perma.cc/NEE8-UKBV]. In each case, the courts held that guilty pleas had collateral-estoppel effect in subsequent civil proceedings and noted that Vermont's safeguards for ensuring voluntary guilty pleas significantly diminished the risk that it would be unfair for defendants to be precluded from relitigating issues in other proceedings.

Vt. 539, 839 A.2d 1246 (mem.) ("To determine whether the second, third, and fourth criteria [of collateral estoppel] are also satisfied, we must identify what is at issue here and what was at issue in the [prior action]."). "[T]he key question [is] whether the factual or legal question presented in the first action is the same as the question presented in the second." In re H.H., 2020 VT 107, ¶ 26, __ Vt. __, 251 A.3d 560 (quotation omitted).

¶ 38.  In the criminal prosecution, the State bore the burden of proving beyond a reasonable doubt that defendant possessed a visual depiction of a "clearly lewd exhibition of a child's genitals or anus," and that he did so knowingly.  13 V.S.A. § 2827(a).  During the plea colloquy, petitioner affirmatively indicated he understood these elements and admitted to the underlying factual basis for each.  The court accepted petitioner's guilty plea, finding that he made it voluntarily after consultation with counsel and that petitioner waived his constitutional rights. The plea judge found that there was a factual basis for the plea based on petitioner's answers during the colloquy.  Following a sentencing hearing in February 2020, the court entered final judgment in the case.  This was a final judgment on the merits.  See State v. Merchant, 173 Vt. 249, 253, 790 A.2d 386, 290 (2001) ("[E]ntry of judgment after sentencing constitutes final judgment, not the entry of the plea."); see also V.R.Cr.P. 32(b).  The second element is met.

¶ 39.  The third Trepanier element asks whether the issue is the same in both proceedings. Trepanier, 155 Vt. at 265, 583 A.2d at 587; see also In re R.H., 2010 VT 95, ¶ 36 ("Preclusion is possible only if the issue was necessarily and essentially determined in a prior action." (quotation omitted)).  Petitioner maintains that the issues are not the same because DCF must prove the existence of identifiable children and a relationship between those children and himself. Therefore, he asserts that the legal standards applied in each proceeding are different.  See Harwood, 2013 VT 89, ¶ 11 (stating that issues are not same if "second action involves application of a different legal standard" (quotation omitted)).  However, as we concluded in Section II above, the issue in this substantiation proceeding is whether petitioner possessed child pornography under

17

§ 4912(15)(G). DCF is not required to prove more. The issue in the first proceeding was whether petitioner knowingly possessed child pornography. The State could not win a conviction against petitioner in the criminal prosecution without obtaining a necessary and essential determination on the issue of possession. Id. Therefore, the issue was the same in both proceedings—whether petitioner possessed child pornography. The third element is met.[11]

¶ 40. The fourth Trepanier element asks whether petitioner had a full and fair opportunity to litigate the issue in the earlier action, and the fifth element asks whether the application of collateral estoppel against him in the subsequent litigation is fair. Trepanier, 155 Vt. at 265, 583 A.2d at 587. "No single test is determinative as to the last two criteria, which must be considered on a case-by-case basis." Daiello v. Town of Vernon, 2018 VT 17, ¶ 13, 207 Vt. 139, 184 A.3d 1192. Some factors to be weighed "are the type of issue preclusion, the choice of forum, the incentive to litigate, the foreseeability of future litigation, the legal standards and burdens employed in each action, the procedural opportunities available in each forum, and the existence of inconsistent determinations of the same issue in separate prior cases." Trepanier, 155 Vt. at 265, 583 A.2d at 587.

¶ 41. DCF, as plaintiff, seeks to apply collateral estoppel against petitioner. This is an example of offensive collateral estoppel. We have previously explained that "[t]he use of offensive collateral estoppel is more controversial than the use of defensive collateral estoppel, and generally requires additional considerations." Id. at 265 n.2, 583 A.2d at 588 n.2; see also In re R.H., 2010 VT 95, ¶ 33 (same). The United States Supreme Court enunciated factors courts should consider

---

[11] In cases where the issues between the two proceedings are a closer call, we recently explained that additional factors may be appropriate to decide the question. See State v. Nutbrown-Covey, 2017 VT 26, ¶¶ 10-11, 204 Vt. 363, 169 A.3d 216 (adopting considerations for courts weighing second and third Trepanier factors from Restatement § 27 comment c); see also In re H.H., 2020 VT 107, ¶ 25 (citing factors enunciated in Nutbrown-Covey). However, because we conclude that the issue here is the same in each proceeding, we need not proceed with a discussion of those additional considerations.

when deciding whether offensive collateral estoppel is fair. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 329-31 (1979) ("[O]ffensive use of collateral estoppel does not promote judicial economy in the same manner as defensive use does."). These factors may include whether: (1) the plaintiff could easily have joined in the earlier action; (2) the plaintiff adopted a "wait-and-see" approach hoping that another plaintiff obtained favorable judgment against the defendant; (3) a defendant failed to litigate vigorously in the first action; (4) the second action affords the defendant procedural opportunities that were unavailable in the first action; and (5) it would be unfair to apply collateral estoppel to a judgment that is inconsistent with previous judgments in favor of the defendant Id.; see also Bifolck v. Philip Morris USA Inc., 936 F.3d 74, 84 (2d Cir. 2019) (applying some Parklane Hosiery factors and explaining that list is not exclusive).

¶ 42. Offensive collateral estoppel is appropriate here because the first, second, third, and fourth Parklane Hosiery considerations above do not weigh in petitioner's favor, and the fifth is inapplicable. First, DCF could not have joined the State in prosecuting petitioner in the first action. Therefore, the first Parklane Hosiery factor weighs in favor of DCF.

¶ 43. The second Parklane Hosiery factor also weighs in favor of DCF. While DCF did stay petitioner's request for administrative review of its substantiation determination while he litigated the criminal action, he points to nothing in the record indicating DCF's actions were a calculated strategy to obtain a favorable judgment before deciding to proceed against him. In fact, he requested the stay himself. See 33 V.S.A. § 4916a(c)(2) (permitting stays pursuant to request of person substantiated). DCF already had the State's evidence before he entered his plea, which was sufficient on its own to substantiate petitioner. Thus, DCF did not adopt a "wait-and-see" approach.

¶ 44. The third Parklane Hosiery factor asks whether the defendant litigated vigorously in the first proceeding. 439 U.S. at 329-31. Petitioner does not argue that he failed to vigorously litigate his criminal defense. He does not attack his plea agreement or allege that the plea colloquy

19

was improperly conducted; nor does the record contain any evidence indicating otherwise.[12] We presume petitioner had an "incentive to fully litigate and defend" in an action where his liberty interests were at stake. See Allen v. Martin, 203 P.3d 546, 561 (Colo. App. 2008) (quotation omitted).

¶ 45. As explained above, our safeguards are designed to ensure that defendants voluntarily and expressly admit their guilt. At the plea colloquy, petitioner admitted to the factual basis underlying each charge, indicated that he understood the elements of the charges, and waived his constitutional right to trial and rights related to trial. He answered "No" when asked whether he was coerced into the plea agreement, testified that he was of sound mind, and again answered "No" when given an opportunity to ask questions. Petitioner concedes he "pleaded guilty with the assistance of highly competent trial counsel based on the evidence against him." Permitting petitioner to now take a different position than he took in the criminal action on the issue of whether he possessed child pornography defies the purposes of collateral estoppel, which include encouraging the public to trust the judicial process. See Harwood, 2013 VT 89, ¶ 10 ("The purpose of collateral estoppel is to conserve court resources by protecting the recourses against repetitive litigation, to promote the finality of judgments, to encourage reliance on judicial decisions, and to decrease the chances of inconsistent adjudication." (quoting In re P.J., 2009 VT 5, ¶ 8)). The third Parkland Hosiery factor weighs in DCF's favor.

¶ 46. The fourth Parklane Hosiery factor asks whether petitioner has procedural opportunities in the second action that were unavailable in the first action. 439 U.S. at 331 n.15 (providing example of unfair procedural opportunity where defendant in first action was forced to

---

[12] Petitioner also does not challenge the admission of his plea before the Board. The statute governing fair hearings provides that a "plea of any type . . . shall be competent evidence in a hearing held under this subchapter." 33 V.S.A. § 4916b(b)(4). Presumably, this would also include a plea of nolo contendere. See V.R.Cr.P. 11(b). Though we express no opinion on it today, the Reporter's Notes to Rule 11 suggest that nolo contendere pleas do not have collateral-estoppel effect. Reporter's Notes, V.R.Cr.P. 11.

litigate in inconvenient forum which hampered ability to conduct discovery and call witnesses). Petitioner does not have procedural opportunities available to him in the substantiation proceedings that he did not have in the first action. As we have emphasized, criminal defendants in Vermont who plead guilty are afforded significant procedural safeguards to ensure that their pleas are voluntary. Therefore, the fourth Parklane Hosiery factor weighs in DCF's favor. Offensive collateral estoppel is appropriate in this case.

¶ 47. Returning to the final Trepanier element, application of collateral estoppel in this case is fair because the evidentiary burden in the criminal prosecution exceeded DCF's burden in the substantiation proceedings. We have held that collateral estoppel was not appropriate to apply against the State in a subsequent civil-suspension hearing where it failed to prove elements of a charge beyond a reasonable doubt in an earlier criminal action. See Pollander, 167 Vt. at 306-07, 706 A.2d at 1362. We explained "that what cannot be proven beyond a reasonable doubt may still be proven by a preponderance of the evidence." Id. at 306, 706 A.2d at 1362. However, it follows that what is proven beyond a reasonable doubt is proven by a preponderance of the evidence. Put differently, by proving the allegations in the criminal prosecution, the State also impliedly met DCF's "burden of proving that it has accurately and reliably concluded that a reasonable person would believe that the child has been abused and neglected by that person." 33 V.S.A. § 4916a(e). Accordingly, the fourth and fifth Trepanier elements are met. Petitioner has failed to meet his burden to demonstrate that collateral estoppel is inappropriate. In re P.J., 2009 VT 5, ¶ 13.

## IV. Fair Hearing

¶ 48. Petitioner's only remaining argument is that he was deprived of a fair hearing as provided by 33 V.S.A. § 4916b, because the Board applied collateral estoppel to prevent him from relitigating the facts underlying his criminal conviction, rather than allowing him a full hearing. However, we held in In re P.J. that where the Board appropriately applies collateral estoppel, a petitioner is not entitled to an evidentiary hearing to relitigate the issue. Id. ¶ 15 ("As all the

21

elements of the <u>Trepanier</u> test have been satisfied, we find that the CHINS determination precludes mother from relitigating the . . . facts and affirm the Board's denial of a hearing to do so."). Therefore, we affirm.

     <u>Affirmed</u>.

FOR THE COURT:

_____
Associate Justice