VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.        24-AP-371



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

AUGUST TERM,   2025

In re Appeal of T.J.*

}  APPEALED FROM:
}  Human Services Board
}  CASE NO. B-07/22-416

In the above-entitled cause, the Clerk will enter:

Petitioner appeals a Human Services Board decision upholding his substantiation for sexual abuse of a minor.  On appeal, petitioner argues that the Board erred in using a policy statement as the applicable legal standard, and the hearing officer abused his discretion in disallowing certain testimony.  We affirm.

In December 2021, the Department for Children and Families (DCF) received a report that petitioner had sexually abused his cousin T.M., who were both fourteen at the time.  During DCF's investigation, T.M.'s younger sister H.K. alleged that petitioner also abused her.  Although the allegations were separate, DCF investigated them with a single intake.  After an investigation, DCF substantiated petitioner for lewd and lascivious conduct with both cousins.  See 33 V.S.A. § 4912(15) (defining "sexual abuse" to include "lewd and lascivious conduct involving a child").  The Registry Review Unit upheld the substantiation.

Petitioner appealed and a hearing officer conducted a hearing.  While the appeal was pending, DCF decided not to proceed on the substantiation for sexual abuse of H.K.  DCF sought a preliminary ruling to exclude her testimony as irrelevant to the alleged abuse of T.M.  The hearing officer granted DCF's motion, explaining that petitioner's opposition failed to identify the relevance of H.K.'s testimony.  The hearing officer indicated, however, that petitioner could request reconsideration at the close of DCF's case if petitioner asserted that the testimony was relevant at that time.  Petitioner made no further request.  At the time of the hearing, petitioner and T.M. were both seventeen.  T.M. testified regarding petitioner's conduct.  The hearing officer found T.M.'s allegations credible and recommended that the Board affirm the substantiation for sexual abuse of T.M.  The hearing officer recommended reversing the substantiation for sexual abuse of H.K. given that no evidence was presented to support it.

The Board subsequently adopted the hearing officer's factual findings, which included the following.  Petitioner perpetrated numerous sexual acts on T.M. starting at the age of five.  These acts continued up to the age of thirteen, and petitioner committed the acts  against her will, without her consent, and by employing threats and coercion.  This conduct occurred in part in their late preadolescent and adolescent years, when petitioner was much larger than T.M. and the

sexual nature of his conduct—which was indecent and not "developmentally normal"—would have been clear to him. The acts occurred when T.M. was staying at petitioner's home and would spend the night. T.M. refused petitioner's advances, but petitioner threatened to tell his parents and T.M. feared being beaten by her uncle. The sexual acts included petitioner touching T.M. on her breasts and vagina, over and under her clothing, forcing her to "hump" him, humping her, forcing her to "suck on his penis," and penetrating her with his finger. On one occasion, T.M. was sleeping and woke up to petitioner penetrating her vagina with dirty fingers, which caused T.M. to have a yeast infection. T.M. did not consent to these acts and actively resisted them. Although petitioner and several family members testified that T.M. was rarely at petitioner's house, the Board credited T.M.'s detailed account over the statements of those family members.

The Board concluded that petitioner's sexual acts against T.M. over the course of several years, including placing his fingers in her vagina, "humping" her, and touching her breasts, all against her consent or with coercion or threats, met the definition of sexual abuse. The Board therefore affirmed DCF's substantiation of petitioner for sexual abuse of T.M. Petitioner filed this appeal.

DCF is responsible for investigating reports of child abuse. 33 V.S.A. § 4915. If DCF determines through investigation that a report "is based upon accurate and reliable information" that would lead a reasonable person to believe "that [a] child has been abused or neglected," the report is considered "[s]ubstantiated." Id. § 4912(16). Under the statute, an abused child includes one who has been sexually abused. Id. § 4912(1). Sexual abuse is defined to include lewd and lascivious conduct with a child. Id. § 4912(15). On appeal, this Court defers to the Board's substantiation decision. In re M.V., 2022 VT 31, ¶ 11, 216 Vt. 491. "Our review is thus limited to determining whether the Board applied the proper legal standard, whether the evidence before the Board reasonably supports its findings, and whether the Board's findings reasonably support its conclusions." Id. (quotation omitted).

On appeal, petitioner first argues that the Board erred by referring to a DCF policy to determine the scope of lewd and lascivious conduct under 33 V.S.A. § 4912(15). In its analysis, the Board cited DCF Family Services Policy 56, which is a guide on substantiating child abuse and neglect. The current version of the policy became effective in 2024 and defines lewd and lascivious conduct involving a child as acts upon, with, or in presence of a child that "violate[] community standards of morality and decency." The policy provides for substantiation if "the conduct would not be considered developmentally normal during childhood or adolescence" and there is: (1) "significant difference in age, size or development"; (2) "force, threat, or coercion"; or (3) "a lack of opportunity or ability to consent." Petitioner contends that the policy is inapplicable because it was not adopted pursuant to the administrative-rulemaking process set forth in the Vermont Administrative Procedure Act (VAPA) and it took effect in 2024 after petitioner's alleged acts of sexual abuse.

The crux of petitioner's argument is that policy statements do not have the force of law and that he was not on notice that his behavior could result in substantiation. Neither argument has merit. The Board did not use Policy 56 as having the force of law; it was used to indicate DCF's guidance on when lewd and lascivious conduct should result in substantiation. This Court defers to DCF's interpretation of statutes regarding child-abuse registration since this topic falls within DCF's area of expertise. In re M.V., 2022 VT 31, ¶ 22. Agency guidance need not be in a formal rule to be relevant. See In re R.H., 2010 VT 95, ¶ 29, 189 Vt. 15 (explaining that agency guidance in policy on interpretation of statute will be followed "absent compelling

2

indications of error" (quotation omitted)).  It was entirely appropriate for the Board to consider DCF's guidance in analyzing whether petitioner's conduct should be substantiated.

Moreover, the guidance in Policy 56 is nearly identical to the language in a promulgated DCF rule, which provides:

> Committing a lewd or lascivious act upon or with any part of the body of a child or in the presence of the child when such conduct violates community standards of morality and decency.  This definition only applies when there is (1) a significant difference in age, size or development or (2) a lack of opportunity or ability to consent and the behavior would not be considered developmentally normal during childhood or adolescence.  For children over the age of 16 who have been subjected to this conduct, this is limited to conduct which is forced, threatened or coerced, or the victim lacked the opportunity or ability to consent.

Dep't for Children & Fams., Family Services Div., Response to Child Abuse & Neglect, Code of Vermont Rules 13 172 200, Rule 2001(20)(E), http://lexisnexis.com/hottopics/codeofvtrules.

The fact that these policies were not in effect during all periods of the alleged conduct does not create a notice issue.[1]  During all relevant times, the statute made clear that a person could be substantiated for lewd and lascivious conduct involving a child.  The Board found that petitioner committed repeated sexual acts against T.M. over the course of several years, against her will, without her consent, and through threats and coercion.  It is evident from the Board's findings that petitioner knew this behavior was unwanted and inappropriate since he engaged in threats, force, and coercion to secure T.M.'s participation.  The Board acted well within its discretion in concluding that these acts amounted to lewd and lascivious conduct simply based on an interpretation of the statutory language and absent any guidance from DCF.[2]  See In re A.P., 2020 VT 86, ¶ 20, 213 Vt. 291 (explaining that "ordinary meaning of lewdness is sexualized behavior that is shocking or repulsive to the community," and "lasciviousness connotes sexual desire or lust").  Therefore, any error in referring to the policy was harmless since petitioner has not demonstrated that there would be a different outcome without considering it.

Petitioner next argues that the Board erred in excluding H.K.'s testimony, arguing that it violated his right to a fair hearing because H.K.'s testimony would have shown a highly similar claim that was false and failure to allow it violated his right to confront adverse witnesses.  The Sixth Amendment right to confrontation "is limited to criminal defendants" and was not applicable in this administrative proceeding.[3]  See Passion v. Dep't of Soc. & Rehab. Servs., 166

---

[1]  Petitioner has not alleged that DCF has provided inconsistent or irrational guidance. See Wood v. Wallin, 2024 VT 21, ¶ 16, 219 Vt. 164 (explaining that Court gives deference to agency decision within area of expertise unless guidance is not clear or not rational).

[2]  Petitioner has not proffered what definition the Board should have applied or demonstrated how his behavior would be outside that definition.  Indeed, it would be difficult to think of a definition of lewd and lascivious conduct that would not subsume petitioner's conduct.

[3]  In his reply brief, petitioner claims that he had a right to present H.K.'s testimony under Fair Hearing Rule 1000.3(O)(3), which provides that a party has the opportunity to "produce

Vt. 596, 598 (1997) (mem.). In any event, a defendant's constitutional right to confront witnesses is limited to evidence that "is otherwise relevant and admissible." State v. Lambert, 2021 VT 23, ¶ 55, 214 Vt. 425. The hearing officer here acted within his discretion in excluding the testimony for lack of relevance. See Passion, 166 Vt. at 598 (explaining that hearing officer has discretion regarding whether to exclude testimony and this Court will reverse only for "an abuse of discretion that caused prejudice"). Prior to the hearing, the hearing officer excluded H.K. as a witness given petitioner's lack of specificity about why the testimony was relevant to the substantiation involving T.M. To the extent that petitioner argues that evidence introduced during the hearing made H.K.'s statements more relevant, petitioner failed to ask for reconsideration of the ruling and therefore did not preserve this argument for appeal. See id. (explaining that matters not raised before Board are not considered on appeal).

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Harold E. Eaton, Jr., Associate Justice

_____
Nancy J. Waples, Associate Justice

---

witnesses and cross-examine adverse witnesses." Fair Hearing Rules, Code of Vermont Rules 13 020 002, http://lexisnexis.com/hottopics/codeofvtrules. This argument was not properly preserved because it was neither raised below nor included in petitioner's initial brief. See Robertson v. Mylan Lab'ys, Inc., 2004 VT 15, ¶ 1 n.2, 176 Vt. 356 (explaining that Court need not address arguments made for first time in reply brief).